Howard Dean ROUSE, Petitioner,

v.

State of IOWA, sub nomine John Ault, Warden, Anamosa State Penitentiary, Respondent.

No. C 99–4027–MWB.

United States District Court,
N.D. Iowa,
Western Division.

July 28, 2000.

Petitioner Howard Dean Rouse was represented by Martha M. McMinn of Sioux City, Iowa.

Respondent John Ault was represented by Thomas William Andrews, Iowa Assistant Attorney General, in Des Moines, Iowa.

**WITHDRAWAL OF REFERRAL TO MAGISTRATE JUDGE AND MEMORANDUM OPINION AND ORDER REGARDING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. WITHDRAWAL OF REFERRAL ........................................... 1119
II. RULING ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ...... 1119
 A. Background ................................................... 1119
 B. Legal Analysis ............................................... 1121

1. Standards for summary judgment ....................................1121
2. Timeliness of federal habeas corpus petitions .......................1122
 a. The limitations period .........................................1122
 b. "Tolling" of the limitations period ..............................1123
3. The meaning of "a properly filed application" .....................1124
 a. Rules of statutory interpretation ..............................1124
 b. Plain meaning and ambiguity .................................1125
 c. Legislative history............................................1127
 d. Purpose and policy ..........................................1127
 i. Limited inquiries into state law in the interest of comity....1128
 ii. Deeper inquiries into state law in the interest of comity ........1131
 iii. "A properly filed application" in light of AEDP A's purpose
 and policy ............................................1138
4. Was Rouse's state post-conviction relief application "properly
 filed"? ...........................................................1142
III. CONCLUSION ...................................................1144

When is a state prisoner's *state* post-conviction relief application "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2), such that it tolls the time for the prisoner to file a *federal* petition for *habeas corpus* relief pursuant to 28 U.S.C. § 2254? That question is squarely presented here, where the respondent contends that the petitioner's state post-conviction relief application was not "properly filed," and therefore cannot make the present action timely, because the state post-conviction relief action was ultimately dismissed pursuant to Iowa Code § 822.8. That state code provision bars claims for post-conviction relief that were already fully litigated or not preserved on direct appeal. The petitioner contends, however, that his post-conviction relief application was "properly filed," and thus tolled the time for his federal *habeas corpus* action, because it complied with state procedural requirements governing time and place of filing. The Eighth Circuit Court of Appeals has not determined the meaning of "a properly filed application" in § 2244(d)(2) and the Circuit Courts of Appeals to address the question are split on the appropriate interpretation. This court must therefore make its own best determination of the question.

## I. WITHDRAWAL OF REFERRAL

However, before addressing the difficult question of the meaning of "a properly filed application" for state post-conviction relief in § 2244(d)(2), the court must first address its prior referral of this action to a magistrate judge. By order dated November 9, 1999, the undersigned referred this petition for *habeas corpus* relief under 28 U.S.C. § 2254, in its entirety, to United States Magistrate Judge Paul A. Zoss pursuant to 28 U.S.C. § 636(b)(1)(B). However, the court finds that it is now appropriate to withdraw that referral. Therefore, the November 9, 1999, referral of this matter to the magistrate judge will be withdrawn and the undersigned will rule upon the respondent's pending motion for summary judgment.

## II. RULING ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

### A. Background

Petitioner Howard Dean Rouse filed his petition for *habeas corpus* relief in this action on April 6, 1999.[1] In that petition,

---

1. That is, Rouse executed his petition on April 6, 1999, and apparently placed it in the prison mail system at that time. *See Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir.1999) (*en banc* ) (holding that "for purposes of applying 28 U.S.C. § 2244(d), a pro se prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court"). Rouse's petition for *habeas corpus* relief and application to proceed *in forma pauperis* were received, and the latter document docketed, by the Clerk of Court on April 9, 1999. In an initial review order dated April 15, 1999, the

Rouse seeks relief, on various grounds, from his conviction of second-degree murder on November 13, 1986, following a bench trial. Rouse was sentenced to imprisonment for not more than fifty years. The Iowa Court of Appeals affirmed Rouse's conviction in an unpublished decision on December 22, 1988. *See State v. Rouse*, 442 N.W.2d 279 (Iowa Ct.App.1988) (table op.). The Iowa Supreme Court declined further review and *procedendo* issued on March 10, 1989. The United States Supreme Court denied Rouse's petition for a writ of certiorari on October 2, 1989. *See Rouse v. Iowa*, 493 U.S. 827, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989).

Thereafter, Rouse filed an application for state post-conviction relief on or about April 6, 1990,[2] and a supplemental application on April 2, 1993. On May 11, 1996, the respondent moved for summary judgment on Rouse's post-conviction relief application on the ground that the application was precluded by Iowa Code § 822.8. Specifically, the respondent argued that two of the issues asserted in the post-conviction relief action had been fully litigated on direct appeal, while the rest of the issues had never been raised on direct appeal. The Iowa District Court for Woodbury County granted the respondent's motion for summary judgment on March 11, 1997. The Iowa District Court concluded that two of the issues raised in the post-conviction relief application were indeed fully litigated on direct appeal, and three others were not raised on direct appeal, so that Rouse was precluded from raising any of these issues in a post-conviction relief proceeding. However, the court concluded that, even if it could consider the merits of these contentions, it would conclude that Rouse's claims were without merit. Rouse's counsel in the post-conviction re-

lief action filed a notice of appeal on April 3, 1997, and Rouse filed his own *pro se* notice of appeal on April 10, 1997. In an unreported decision filed on October 29, 1998, the Iowa Court of Appeals affirmed summary judgment in favor of the respondent in Rouse's post-conviction relief action, specifically finding that the claims were barred pursuant to Iowa Code § 822.8 and that Rouse had failed to show "cause" and "prejudice," in the form of ineffective assistance of appellate counsel, for the failure to raise the unlitigated claims on direct appeal. *See Rouse v. State*, No. 8–451/97–0626, slip op. at 3–4 (Iowa Ct.App. Oct. 29, 1998). The Iowa Supreme Court denied Rouse's request for further review on January 4, 1999.

Rouse's present federal action for *habeas corpus* relief pursuant to 28 U.S.C. § 2254 followed on April 6, 1999. After an extension of time to do so, the respondent answered Rouse's petition for *habeas corpus* relief on June 25, 1999. On November 5, 1999, prior to the date on which Rouse's opening brief was due, the respondent moved for summary judgment or partial summary judgment in this action. The respondent asserts that Rouse's *habeas corpus* action is time-barred, because his post-conviction relief application was "improperly filed" under Iowa Code § 822.8, and thus did not toll the statute of limitations for this action. The respondent also asserts that, even if this action is not time-barred, it involves a "mixed petition" including improperly exhausted and defaulted claims, so that it should be dismissed. Finally, the respondent contends that Rouse's claims fail on the merits.

Rouse resisted the respondent's motion for summary judgment in this action on February 22, 2000. Rouse contends that this *habeas corpus* action is timely, be-

court granted the application to proceed *in forma pauperis* and further directed the respondent to file an answer to the petition in accordance with the Rules Governing Section 2254 Cases. Rouse's petition for habeas corpus relief was consequently docketed on April 15, 1999.

2. This is the date indicated for when the application was "prepared," but the file stamps of the Clerk of Court for the Iowa District Court for Woodbury County are illegible.

cause the ultimate disposition of his state post-conviction relief application is not relevant to whether that action was "properly filed" so as to toll the limitations period for the present action. Rather, he contends that the state post-conviction relief action tolled the limitations period for the present action, because it was "properly filed" in terms of procedural requirements such as time and place of filing. He also contends that, if his federal *habeas* petition is "mixed," he should be allowed to proceed on his properly exhausted claim or claims or to attempt to exhaust all of his claims. In his resistance to the motion for summary judgment, Rouse argues the merits of only one claim—the one he believes is "most likely to succeed on the merits," his contention that certain statements made to law enforcement officials that were used to impeach him were involuntary—although he contends he is not thereby waiving any other claims.

In a reply brief filed March 3, 2000, the respondent attempts to distinguish the authority upon which Rouse relies for the proposition that his post-conviction relief action was "properly filed." The respondent contends that those decisions actually did not address the precise question at issue here, but turned on issues of whether the post-conviction relief applications were "pending" through various stages of their appeals, issues the respondent contends have been resolved in the same way by the Eighth Circuit Court of Appeals. Moreover, the respondent presses his argument that Rouse's non-compliance with IOWA CODE § 822.8 is an adequate and independent state law ground for denial of Rouse's claims, and hence renders Rouse's claims unreviewable in his federal *habeas* petition.

### B. Legal Analysis

#### 1. Standards for summary judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R. CIV. P. 56 in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998);

*Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347, 2000 WL 84400 (8th Cir. 2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here.

Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106

S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same).

These same standards apply to federal *habeas corpus* actions. *See Lamp v. Iowa,* 122 F.3d 1100, 1104 (8th Cir.1997) (applying the same standards to a motion for summary judgment in a *habeas corpus* action, citing *Schrier v. Halford,* 60 F.3d 1309, 1310 (8th Cir.1995), which in turn cites FED. R. CIV. P. 56(c) and *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548). Moreover, this court has recognized that primarily legal issues, and more particularly the le-gal issue of statutory interpretation, which is central to the respondent's motion for summary judgment, are particularly appropriate for adjudication on a motion for summary judgment. *See Johnson v. Land O' Lakes,* 18 F.Supp.2d 985, 993–94 (N.D.Iowa 1998); *Prudential Ins. Co. of Am. v. Rand & Reed Powers Partnership,* 972 F.Supp. 1194, 1202–03 (N.D.Iowa 1997), *aff'd,* 141 F.3d 834 (8th Cir.1998). Therefore, with these standards in mind, the court turns to consideration of the respondent's motion for summary judgment on Rouse's federal *habeas corpus* petition.

## 2. Timeliness of federal habeas corpus petitions

### a. The limitations period

Under the Anti–Terrorism and Effective Death Penalty Act (AEDPA), petitions for *habeas corpus* relief are subject to a one-year statute of limitations as provided in 28 U.S.C. § 2244(d)(1). "By the terms of § 2244(d)(1), the one-year limitation period begins to run on one of several possible dates, including the date on which the state court judgment against the petitioner became final." *Ford v. Bowersox,* 178 F.3d 522, 523 (8th Cir.1999).[3] Where the petitioner's judgment became final before the effective date of the AEDPA on April 24, 1996, the Eighth Circuit Court of Appeals has adopted a one-year "grace" period, which ended on April 24, 1997, for the filing of *habeas* petitions. *See Peterson v. Gammon,* 200 F.3d 1202, 1204 (8th Cir. 2000); *Mills v. Norris,* 187 F.3d 881, 882

**3.** The limitations provision provides as follows:

(d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2244(d)(1) & (2).

(8th Cir.1999); *Ford,* 178 F.3d at 523; *Moore v. United States,* 173 F.3d 1131, 1135–36 (8th Cir.1999); *Nichols v. Bowersox,* 172 F.3d 1068, 1073 (8th Cir.1999) (*en banc*). Moreover,

> In *Nichols v. Bowersox,* 172 F.3d 1068, 1073 (8th Cir.1999) (en banc), [the Eighth Circuit Court of Appeals] held that time before the effective date of AEDPA, April 24, 1996, is not counted in computing the one-year period of limitation. Prisoners whose judgments of conviction became final before the effective date of AEDPA are given a one-year period after that date, or until April 24, 1997, plus any additional periods during which the statute is tolled.

*Peterson,* 200 F.3d at 1204.

Here, Rouse's conviction became "final" either on March 10, 1989, when the Iowa Supreme Court declined further review of his conviction and *procedendo* issued, or possibly as late as October 2, 1989, the date on which the United States Supreme Court denied Rouse's petition for a writ of certiorari. *See* 28 U.S.C. § 2244(d)(1)(A) (the limitations period runs from the date the state judgment becomes final upon conclusion of direct review). Either date is well before the effective date of the AEDPA, April 24, 1996. Thus, Rouse could have filed a timely *habeas* petition within the one-year "grace" limitations period, from the effective date of the AEDPA until April 24, 1997. *See Peterson,* 200 F.3d at 1204; *Mills,* 187 F.3d at 882; *Ford,* 178 F.3d at 523; *Moore,* 173 F.3d at 1135–36; *Nichols,* 172 F.3d at 1073. This he did not do. Consequently, Rouse's petition for *habeas corpus* relief is only timely if the limitations period was tolled for all but a period of less than one year between April 24, 1996, and April 6, 1999, the date on which the petition in this action was filed by application of the "prison mailbox"

rule to this *habeas* action. *See Nichols,* 172 F.3d at 1077; note 1, *supra.*

#### b. *"Tolling" of the limitations period*

As the Eighth Circuit Court of Appeals indicated in *Peterson,* the limitations period for federal *habeas* actions can be "tolled." *Peterson,* 200 F.3d at 1204 ("Prisoners whose judgments of conviction became final before the effective date of AEDPA are given a one-year period after that date, or until April 24, 1997, plus any additional periods during which the statute is tolled."). The applicable "tolling" provision is § 2244(d), which provides that "[t]he time during which *a properly filed application* for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted* toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added); *Mills,* 187 F.3d at 882. The Eighth Circuit Court of Appeals has concluded that "[t]he tolling period under § 2244(d)(2) includes time spent on an unsuccessful appeal of the denial of state postconviction relief." *Mills,* 187 F.3d at 882. The limitations period is also "tolled" during the period after which a notice of appeal is filed until the expiration of the time to perfect the appeal has run, even if the petitioner fails to perfect that appeal. *Id.* at 884 (finding that such a reading "harmonizes" the "tolling" provision of § 2244(d)(2) with the requirement in 28 U.S.C. § 2254(c) that petitioners "exhaust" state remedies). Furthermore, a post-conviction relief proceeding is "pending" during "the entire period during which a notice of appeal from a denial of post-conviction review would be timely, assuming such a notice was in fact filed," as well as during the time the appeal is actually on file. *Peterson,* 200 F.3d at 1204–05.[4] In short, post-conviction relief actions filed before or during the limitations period for *habeas corpus* actions are "pending," and

---

4. The court in *Peterson* did not reach the question of whether the post-conviction relief action is "pending" during the time the petitioner could have sought, but did not seek,

further review on certiorari to a state supreme court after a state appellate court affirmed denial of post-conviction relief. *Peterson,* 200 F.3d at 1205.

the limitations period is "tolled," within the meaning of § 2244(d)(2) during the time "a properly filed" post-conviction relief action is before the district court, during the time for filing of a notice of appeal and during the time the petitioner has to perfect the appeal in such a "properly filed" action, if the petitioner actually files a notice of appeal, and during the appeal itself.

■ However, where a petitioner whose conviction was final before the effective date of the AEDPA files an application for post-conviction relief in state court only after the expiration of the one-year limitations "grace" period, "the claims he raised in that [post-conviction relief action] were not exhausted in time to raise them in a federal habeas action." *Jackson v. Dormire*, 180 F.3d 919, 920 (8th Cir.1999) (citing 28 U.S.C. § 2244(d), and *Moore*, 173 F.3d at 1135). Thus, although § 2244(d)(2) normally tolls the limitations period during the pendency of state post-conviction relief proceedings, the limitations period is *not* tolled during the pendency of post-conviction relief proceedings begun after the limitations "grace" period expired on April 24, 1997. *Id.*

Here, the respondent contends that Rouse's state post-conviction relief action, filed on or about April 6, 1990, and unfavorably concluded on January 4, 1998, was not "properly filed" within the meaning of § 2244(d)(2), so that it cannot "toll" the deadline for filing his federal *habeas corpus* action past April 24, 1997, even though this action was actually filed on April 6, 1999, within one year of the conclusion of Rouse's state post-conviction relief action. Thus, the court must determine whether Rouse's state post-conviction relief action was "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2), where the meaning of "a properly filed application" under the statute is a question on which the Eighth Circuit Court of Appeals is silent and the Circuit Courts of Appeals to consider the question are split.

### 3. The meaning of "a properly filed application"

#### a. Rules of statutory interpretation

■ Obviously, the first place to look for the correct interpretation of terms in the context of a particular statute is in the statute itself or the act in which the terms are used, to see if the statute or act provides a specific definition. *Iowa Utilities Bd. v. Federal Communications Comm'n*, 219 F.3d 744, 751 (8th Cir.2000) (considering whether "Congress has ... spoken directly on the meaning of the word in this context"). However, in the absence of a statutory definition, this court has explained the applicable rules of statutory interpretation as follows:

"The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Chevron U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *United States v. Union Elec. Co.*, 64 F.3d 1152, 1165 (8th Cir.1995) (citing *Ron Pair*); *United States ex rel. Harlan v. Bacon*, 21 F.3d 209, 210 (8th Cir.1994) ("When construing a statute, we are obliged to look first to the plain meaning of the words employed by the legislature ...," citing *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778); *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir.1992) ("When interpreting statutory language, the court must first look to the plain meaning of the language," citing *North Dakota v. United States*, 460 U.S. 300, 312–13, 103 S.Ct. 1095, 75 L.Ed.2d 77 (1983)). The Supreme Court describes this rule as the "one, cardinal canon before all others." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Thus, "courts must presume that a legislature says in a statute what it means and means in a

statute what it says there." *Id.* (citing *Ron Pair,* 489 U.S. at 241–42, 109 S.Ct. 1026; *United States v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897); *Oneale v. Thornton,* 6 Cranch 53, 68, 3 L.Ed. 150 (1810)). When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." *Ron Pair,* 489 U.S. at 241, 109 S.Ct. 1026 (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)); *Union Elec.,* 64 F.3d at 1165 (quoting *Ron Pair* ); *Melahn v. Pennock Ins., Inc.,* 965 F.2d 1497, 1502 (8th Cir.1992) (plain meaning of a statute governs over ambiguous legislative history, citing *Ron Pair Enterprises* ).

*Hoffman v. Cargill, Inc.,* 59 F.Supp.2d 861, 871 n. 6 (N.D.Iowa 1999); *accord Nebraska v. Central Interstate Low–Level Radioactive Waste Comm'n,* 207 F.3d 1021, 1023 (8th Cir.2000) ("When the statutory language provides a clear answer, the analysis ends. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999)."); *Braswell v. City of El Dorado, Ark.,* 187 F.3d 954, 958 (8th Cir.1999) ("In statutory interpretation questions, we start with the plain language of the statute."); *United States v. Smith,* 171 F.3d 617, 620 (8th Cir.1999) ("In construing a statute, we look first to the plain meaning of the words of the statute. *See Salinas v. United States,* 522 U.S. 52, 118 S.Ct. 469, 474, 139 L.Ed.2d 352 (1997)."). This "plain language" or "plain meaning" rule of interpretation is not limited to the meaning of individual terms; rather, "[s]uch an inquiry requires examining the text of the statute as a whole by considering its context, 'object, and policy.' " *Harmon Indus., Inc. v. Browner,* 191 F.3d 894, 899 (8th Cir.1999) (quoting *Pelofsky v. Wallace,* 102 F.3d 350, 353 (8th Cir.1996)). So much for unambiguous statutes.

▬ If a statute is ambiguous, the court must look to other aids to determine congressional intent, including legislative history, *see Smith,* 171 F.3d at 620, and " 'the purpose, the subject matter and the condition of affairs which led to its enactment.' " *Norwest Bank of North Dakota, N.A. v. Doth,* 159 F.3d 328, 333 (8th Cir. 1998) (quoting *United States v. S.A.,* 129 F.3d 995, 998 (8th Cir.1997), *cert. denied,* 523 U.S. 1011, 118 S.Ct. 1200, 140 L.Ed.2d 329 (1998)); *see generally Adler v. I & M Rail Link, L.L.C.,* 13 F.Supp.2d 912, 931 n. 10 (N.D.Iowa 1998) (after examining the plain meaning of a statute, " 'if doubts remain, [the court] must resolve them in the light, not only of the policy intended to be served by the enactment, but, as well, by all other available aids to construction' ") (quoting *Bacon,* 21 F.3d at 210–11). A statute is ambiguous if it is susceptible of more than one reasonable interpretation. *See, e.g., National Rifle Ass'n of Am., Inc. v. Reno,* 216 F.3d 122, 130 (D.C.Cir.2000) (citing *United States v. Nofziger,* 878 F.2d 442, 446–47 (D.C.Cir.1989), for the proposition that a statute is ambiguous if it can be read in more than one way); *C & H Nationwide, Inc. v. Norwest Bank Texas, N.A.,* 208 F.3d 490, 495 (5th Cir.2000) (observing that, as a matter of statutory interpretation of a federal statute, " '[a] statute is ambiguous if it is susceptible of more than one accepted meaning' ") (quoting *United Servs. Auto. Ass'n v. Perry,* 102 F.3d 144, 146 (5th Cir.1996)); *In re Lan Assocs. XI, L.P.,* 192 F.3d 109, 116 (3d Cir.1999) (differing reasonable interpretations render a statute ambiguous). Thus, " '[w]hen the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purposes of the law.' " *Doth,* 159 F.3d at 333 (quoting *S.A.,* 129 F.3d at 998).

### b. *Plain meaning and ambiguity*

As noted above, the "tolling" provision in question provides as follows: "The time during which a *properly filed application* for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be*

*counted* toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). Unfortunately, Congress provided no statutory definition of "a properly filed application" for state post-conviction relief in either § 2244 or elsewhere in the AEDPA. *See Iowa Utilities Bd.,* 219 F.3d at 751 (looking to see if Congress has defined the term in context).

The plain meaning of the provision, *Hoffman,* 59 F.Supp.2d at 871 n. 6 (statutory interpretation begins with the "plain meaning"), clearly indicates that something more than "filing" of any post-conviction relief application is required to stop the clock on the timeliness of a federal *habeas corpus* action; what is required is "a *properly* filed application." 28 U.S.C. § 2244(d)(2) (emphasis added). The court must assume that, by including the "properly" limitation, Congress intended to limit the "tolling" effect of state post-conviction relief proceedings only to certain actions. *Hoffman,* 59 F.Supp.2d at 871 n. 6 (" '[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.' ") (quoting *Connecticut Nat'l Bank,* 503 U.S. at 253, 112 S.Ct. 1146).

■ What is so troublesome, however, is that the word "properly," like the word "cost," " 'is a chameleon, capable of taking on different meanings, and shades of meaning, depending on the subject matter and the circumstances of each particular usage.' " *Iowa Utilities Bd.,* 219 F.3d at 751 (quoting *Strickland v. Commissioner, Maine Dept. of Human Servs.,* 48 F.3d 12, 19 (1st Cir.1995), *cert. denied,* 516 U.S. 850, 116 S.Ct. 145, 133 L.Ed.2d 91 (1995)). Here, the context of "properly" in the key phrase, and indeed, the troublesome phrase in the context of the entire sentence constituting § 2244(d)(2), offer only slight clarification. *See Harmon Indus., Inc.,* 191 F.3d at 899 ("[The plain language] inquiry requires examining the text of the statute as a whole by considering its context, 'object, and policy.' ") (quoting *Pe-*

*lofsky,* 102 F.3d at 353). What must be "properly filed," according to § 2244(d)(2), taken as a whole, is an "application for *State* post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2) (emphasis added). In context, because reference is made to *state* proceedings attacking what must necessarily be a judgment of conviction in state court or asserting a claim that necessarily arose in the course of state criminal proceedings, it follows that the determination of whether the post-conviction relief application is "properly filed" would be by reference to *state law.* Moreover, the "object and policy" of the provision, and the object and policy of § 2244(d) more generally, as evinced in plain language, are to ensure that state courts entertain claims before those claims are asserted in federal *habeas corpus* proceedings. *See* 28 U.S.C. § 2244(d)(1)(A) & (B) (providing that the limitations period for the federal action does not begin to run until the state proceedings for conviction and review are completed or the time for such review has expired, or until an impediment to a federal case arising from state action has been removed); *id.* at § 2244(d)(2) (excluding from the limitations period for the federal action such time as state post-conviction relief actions are pending). Thus, examining the "plain meaning" of the phrase in question in light of the context, object, and policy of the statute in which the phrase appears, whether or not a post-conviction relief application is "properly filed" is plainly a matter of state law.

■ Nevertheless, the court must conclude that the phrase "a properly filed application" for post-conviction relief is reasonably susceptible of both constructions offered by the parties here, and hence is ambiguous. *See, e.g., National Rifle Ass'n of Am., Inc.,* 216 F.3d at 131 (defining ambiguity of a federal statute in a similar way); *C & H Nationwide, Inc.,* 208 F.3d at 495 (same); *In re Lan Assocs. XI, L.P.,* 192 F.3d at 116 (same). Both

parties rely on state law for the interpretation of whether the post-conviction relief application is "properly filed"—they differ on how deeply the federal court may inquire into state law. The petitioner contends that the federal court may look no deeper than state procedural requirements governing time and place of filing, while the respondent asserts that the federal court may also consider the propriety of the application in light of state statutes governing (or limiting) the nature of claims that may be asserted in post-conviction relief proceedings, and, probing even deeper, contends that the federal court must examine whether the state district and appellate courts entertaining the petitioner's specific post-conviction relief proceeding ultimately dismissed the action as procedurally barred in some way. Neither approach is patently unreasonable in light of, or plainly foreclosed by, the language, context, object, or policy of the statute. *See Harmon Indus., Inc.*, 191 F.3d at 899 ("plain meaning" should be determined in light of context, object, and policy).

Thus, the court concludes that it must look to other aids to determine the correct interpretation of "a properly filed application" in § 2244(d)(2). *See Smith*, 171 F.3d at 620 (permitting the court to turn to other aids to construction when the statutory language is ambiguous); *Doth*, 159 F.3d at 333 (same); *Adler*, 13 F.Supp.2d at 931 n. 10 (same).

### c. *Legislative history*

The first such "other aid" to statutory construction is legislative history. *See Smith*, 171 F.3d at 620. However, this court has found no snippet of legislative history that specifically addresses the meaning of "a properly filed application" in

the congressional record leading to the enactment of § 2244(d) as part of the AEDPA, nor has any federal court to consider the question found legislative history that was helpful. *See, e.g., Weekley v. Moore*, 204 F.3d 1083, 1085 (11th Cir.2000) ("The phrase 'properly filed application' is not defined in the AEDPA itself and the legislative history sheds little light on its meaning."); *Webster v. Moore*, 199 F.3d 1256, 1258 (11th Cir.2000) ("The legislative history of the provision offers no help in evaluating these [conflicting] interpretations."), *petition for cert. filed*, (March 20, 2000) (No. 99–8819); *Villegas v. Johnson*, 184 F.3d 467, 470 (5th Cir.1999) ("Neither AEDPA nor its legislative history explains which state filings qualify as properly filed applications.").[5] Thus, the court must look elsewhere for guidance.

### d. *Purpose and policy*

■ When the "plain meaning" of a statute is ambiguous, and legislative history is unhelpful, the next step is to attempt to make sense of a statute's language in light of the statute's purpose and policy. *See generally Adler*, 13 F.Supp.2d at 931 n. 10 (after examining the plain meaning of a statute, " 'if doubts remain, [the court] must resolve them in the light, not only of the policy intended to be served by the enactment, but, as well, by all other available aids to construction' ") (quoting *Bacon*, 21 F.3d at 210–11). Thus, the court must consider " 'the purpose, the subject matter and the condition of affairs which led to [the statute's] enactment' " so that the statute is " 'given a sensible construction and construed to effectuate the underlying purposes of the law.' " *Doth*, 159 F.3d at 333 (quoting *S.A.*, 129 F.3d at 998). It is on this step in statutory interpreta-

---

5. Indeed, courts have noted the absence of pertinent legislative history—perhaps suggesting their frustration at this lack of congressional guidance on the meaning of a key term—before, or without ever, making an express determination that the statutory language is ambiguous. However, there can be little doubt, in light of the split among the circuits, based on reasonable, albeit irrecon-

cilable, interpretations, that the meaning of "a properly filed application" in § 2244(d)(2) is ambiguous. *See National Rifle Ass'n of Am., Inc.*, 216 F.3d at 131 (a statute is ambiguous if it can reasonably be read in more than one way); *C & H Nationwide, Inc.*, 208 F.3d at 495 (same); *In re Lan Assocs. XI, L.P.*, 192 F.3d at 116 (same).

tion that guidance from decisions of other courts is perhaps most helpful, even where, as here, the decisions of the Circuit Courts of Appeals to consider the question indicate a split as definite, apparently irreconcilable, and most likely outcome-determinative, as that between the parties in this case on the meaning of "a properly filed application."

Although the federal appellate courts are split on the meaning of the provision, there is nevertheless some common ground in their interpretive processes, as demonstrated by the discussion of pertinent cases *infra*. First, these courts all agree with this court's conclusion, based on the "plain meaning" of § 2244(d)(2), that whether or not a state post-conviction relief application is "properly filed" is a question of state law. Second, they all agree that the purposes and policies of the AEDPA that must be served by the interpretation of § 2244(d)(2), which relies on state law for the meaning of a "properly filed application," include the principles of "comity," "exhaustion," and "procedural default." They part company, however, on what interpretation of § 2244(d)(2) best serves these purposes and polices. The fundamental difference between the interpretations is how deep an inquiry into "state law" is permissible, in the interest of "comity," to determine whether a state post-conviction relief application is "properly filed" within the meaning of § 2244(d)(2), and hence capable of tolling the deadline for the filing of a federal *habeas* petition.

***i. Limited inquiries into state law in the interest of comity.*** A number of Circuit Courts of Appeals favor something like the position asserted by the petitioner here, because they permit only a very limited inquiry into whether a state post-conviction relief application complies with state procedural requirements to determine whether the application is "properly filed." This group includes the Courts of Appeals of the Second, Third, Fifth, and Tenth Circuits.

For example, the Third Circuit Court of Appeals, the first federal appellate court to reach the question, concluded that the interpretation of "a properly filed application" is informed by "principles of comity," which led that court to the conclusion that only a limited inquiry was permissible. *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir.1998). The court explained,

> In our federal system, "the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991). Such respect for the states has given rise to the well-established rule that a federal court should not find a state prisoner's claims procedurally barred from federal habeas review unless state law "clearly foreclose[s]" review of the claims. *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir.1993); *see Banks v. Horn*, 126 F.3d 206, 211 (3d Cir.1997); *Doctor v. Walters*, 96 F.3d 675, 683 (3d Cir.1996). Moreover, in enacting AEDPA, of which § 2244(d) is a part, Congress intended to "reduce federal intrusion into state criminal proceedings." *Banks*, 126 F.3d at 213.

> Thus, if a state allows petitioners to file second or subsequent petitions for post-conviction relief, federal courts should not undermine the state's decision by refusing to toll the one-year period of limitation of § 2244(d)(1) where a second or subsequent petition is pending in the state court system. Nor should we discourage petitioners from exhausting all their claims in state court, even by means of a second or subsequent petition for post-conviction relief where permissible under state law, before seeking habeas review in federal court.

> We believe that "a properly filed application" is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing.

*Lovasz,* 134 F.3d at 148. Thus, recognizing that the Pennsylvania Supreme Court had imposed strict limitations on "second or subsequent" post-conviction relief applications, but sometimes allowed, and even granted relief on, such applications, the Third Circuit Court of Appeals concluded that even the filing of a "second or subsequent" post-conviction relief application should toll the limitations period for federal *habeas review. Id.* at 149. Moreover, the court concluded that "in considering whether a petition for post-conviction relief is properly filed, district courts should not inquire into its merits." *Id.* A rule requiring an inquiry into the merits, the court concluded, would give rise to a conundrum: Does a second or subsequent state petition become "improperly filed" when the district court determines that it is "meritless," then become "properly filed" when an appellate court reverses and remands, only to lose that status again when the district court reaches and rules "on the merits" of the action unfavorably to the petitioner? *Id.* (citing *Hughes v. Irvin,* 967 F.Supp. 775, 779 (E.D.N.Y.1997), as exemplifying such a conundrum). Moreover, the court noted that "Congress chose the phrase 'a properly filed application,'

one into which we do not read any requirement that the application be non-frivolous." *Id.* (emphasis in the original).[6]

The Fifth Circuit Court of Appeals permits an even more limited inquiry than the Third, even though the Fifth Circuit Court of Appeals began its seminal decision on the interpretation issue, *Villegas v. Johnson,* 184 F.3d 467 (5th Cir.1999), by following in the footsteps of the *Lovasz* decision. The Fifth Circuit Court of Appeals explained its interpretation, and the rationale for it, as follows:

> The majority of courts that have considered this issue have concluded that " 'a properly filed application' is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing." *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998); *accord, e.g., Souch v. Harkins,* 21 F.Supp.2d 1083 (D.Ariz. 1998); *Galindo v. Johnson,* 19 F.Supp.2d 697 (W.D.Tex.1998); *Ellis v. Johnson,* 11 F.Supp.2d 695 (N.D.Tex. 1998); *Hughes v. Irvin,* 967 F.Supp. 775 (E.D.N.Y.1997). A handful of district courts have found instead that a properly filed application is one that is not frivolous, but these courts have offered

6. Since its decision in *Lovasz,* the Third Circuit Court of Appeals has reiterated its conclusions, without necessarily relying upon that decision to resolve appeals then before the court. In *Swartz v. Meyers,* 204 F.3d 417, 421 (3d Cir.2000), the court repeated its conclusions in *Lovasz,* but concluded that the question of whether the state post-conviction relief application in *Swartz* was "properly filed" was not really at issue; instead, the court found that the question in *Swartz* was the effect of denial of the petitioner's appeal in his post-conviction relief proceedings upon the question of whether his state application was "pending" within the meaning of § 2244(d)(2). *Swartz,* 204 F.3d at 421 & n. 3. That question has been settled by the Eighth Circuit Court of Appeals. *See Mills,* 187 F.3d at 882 ("The tolling period under § 2244(d)(2) includes time spent on an unsuccessful appeal of the denial of state postconviction relief."). On a slightly different issue, in *Morris v. Horn,* 187 F.3d 333 (3d Cir. 1999), the Third Circuit Court of Appeals did not directly address its interpretation of "a

properly filed application," but did comment on a district court's attempt to address the conundrum, discussed in *Lovasz,* which involves when a state application ceases to be "properly filed." The district court in *Morris* attempted to avoid the conundrum by dismissing a federal *habeas* petition, during the pendency of a post-conviction relief application in state court, without prejudice to amendment of the federal petition upon disposition of the state application, assuming that the amendment would relate back to the filing of the original federal *habeas* action. *See Morris,* 187 F.3d at 338. The Third Circuit Court of Appeals concluded that, even if the federal district court were to hold the federal *habeas* action in abeyance, such a course would not "save" the petitioner's opportunity to seek federal review, because, if the state court ultimately dismissed the state application as untimely, that state procedural bar would also bar relief on the federal petition, unless the petitioner could show "cause and prejudice." *Id.* at 342.

**1130**

little analysis to support their conclusion that the phrase "properly filed" connotes some measure of merit. *See Washington v. Gramley,* No. 97 C 3270, 1998 WL 171827 (N.D.Ill. Apr. 10, 1998); *Hill v. Keane,* 984 F.Supp. 157 (E.D.N.Y.1997); *Valentine v. Senkowski,* 966 F.Supp. 239 (S.D.N.Y.1997). We agree with the majority line of cases and, based on principles of statutory construction and concerns regarding comity and exhaustion, *we hold that a "properly filed application" for § 2244(d)(2) purposes is one that conforms with a state's applicable procedural filing requirements.*

*Villegas,* 184 F.3d at 469–70 (emphasis added). The court then defined "procedural filing requirements" as "those prerequisites that must be satisfied before a state court will allow a petition to be filed and accorded some level of judicial review. Such filing requirements are not limited to the rules governing notice and the time and place of filing and may include, for example, a requirement that the petitioner obtain judicial authorization for the filing." *Id.* at 470 n. 2.

Like the Third Circuit Court of Appeals, the Fifth rejected the notion that whether an application was "properly filed" should involve any inquiry into the "merits," but its definition of "merits" appears to include such things as state limitations on successive petitions and procedurally defaulted claims: The court rejected the argument that a second or successive state application or one containing procedurally barred claims "is *per se* improperly filed," because "[s]ection 2244(d)(2) explicitly requires only that a state application be properly filed," and "[h]ad Congress intended to condition tolling *on a state court finding of merit,* it could have drafted § 2244(d)(2) to exclude frivolous petitions from its scope."*Id.* at 470 (emphasis added). Since Congress had enacted the AEDPA in light of judge-made rules concerning procedural default and specifically dealt with successive petitions in § 2244(a)-(b), the failure to address suc-

cessive state petitions or procedurally barred claims in § 2244(d)(2) "convince[d] [the court] all the more that [it] ought not to assume an overly broad meaning of 'properly filed.'" *Id.* Finally, the court concluded that its reading of § 2244(d)(2) comported with principles of comity and exhaustion, because the AEDPA "evinces no congressional intent to embroil federal courts in problematic determinations of the merit of state court filings." *Id.* at 471.

The *Villegas* decision has had a healthy number of progeny in the Fifth Circuit. Recent examples include *Hall v. Cain,* 216 F.3d 518 (5th Cir.2000), in which the court reiterated the holding of *Villegas* that a state application is "properly filed" "regardless of whether it has merit, if it is 'one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing.'" *Hall,* 216 F.3d at 519 (quoting *Villegas,* 184 F.3d at 469). The court in *Hall* also reiterated the holding of an interim decision, *Smith v. Ward,* 209 F.3d 383 (5th Cir.2000), which "held that state habeas petitions submitted to Louisiana courts, *even when dismissed as untimely* without consideration of the merits, fell within the *Villegas* definition of 'properly filed' for tolling purposes," because " 'Louisiana courts will accept a prisoner's application for filing and review it to determine whether any of the statutory exceptions to untimely filing are applicable [and][i]f the untimely application does not fit within an exception, the state court will dismiss it.' " *Id.* (emphasis added) (quoting *Smith,* 209 F.3d at 384–85). Based on *Villegas* and *Smith,* the court in *Hall* held that state petitions dismissed pursuant to the Louisiana rule regarding repetitive petitions were nevertheless "properly filed," because "courts review petitions to determine whether claims are repetitive and, if so, if there is a reason for such repetition before dismissing them." *Id.* at 520. Thus, "the fact that the issues raised by Hall were ultimately determined to be repetitive and thus not subject to state habeas

review is not relevant; they were 'properly filed' in accordance with Louisiana law because a Louisiana state habeas court would have to review them tò discern whether they actually were repetitive and thus not subject to review." *Id.* Thus, under the Fifth Circuit definition, which is still more generous than the Third Circuit definition, even a state petition ultimately dismissed by the state court as "repetitive" or "untimely" is "properly filed" within the meaning of § 2244(d)(2), at least if the state court undertakes any sort of "review" to determine whether the petition is in fact "untimely" or "repetitive" or whether there is instead some excuse from these procedural failings. *Id.; see also Dilworth v. Johnson,* 215 F.3d 497, 500–01 (5th Cir. 2000) (pursuant to *Villegas* and *Smith,* whether a state petition would have been dismissed as an "abuse of the writ" is not relevant to a determination of whether it is "properly filed" within the meaning of § 2244(d)(2), and even if the petition was filed in the wrong state court, Texas rules required the state court to transfer the action to the correct court, so that the petition was still "properly filed"; "[m]oreover, the state trial court did address the merits of his claim"); *but see Williams v. Cain,* 217 F.3d 303, 306–08 (5th Cir.2000) (concluding, in light of *Villegas* and *Smith,* that a clearly untimely state petition was not "properly filed" within the meaning of § 2244(d)(2)).

Also in the camp with the Third and Fifth Circuit Courts of Appeals are the Second and Tenth. The Second Circuit Court of Appeals has held that a state application is "properly filed" if it is "an application for state post-conviction relief recognized as such under governing state procedures." *Bennett v. Artuz,* 199 F.3d 116, 123 (2d Cir.1999) (recognizing the split in the circuits, but citing *Villegas,* 184 F.3d at 472–73, and *Lovasz,* 134 F.3d at 148, in support of its conclusion that "merit" is irrelevant to whether the application is "properly filed"), *cert. granted,* —— U.S. ——, 120 S.Ct. 1669, 146 L.Ed.2d 479 (2000); *but see Adeline v. Stinson,* 206

F.3d 249, 252–53 (2d Cir.2000) (nothing in *Bennett* required recognition of "creative, unrecognized motions for leave to appeal" as "properly filed" applications for post-conviction relief). Similarly, after discussing various cases on both sides of the split, and expressing the concern that considering "defenses," such as procedural bars, would involve the federal court in either pre-determining questions that properly belonged to the state courts or holding federal actions in abeyance until state courts had adjudicated any issues of a state procedural bar, the Tenth Circuit Court of Appeals followed what it perceived to be the "majority view" by holding that "a state petition that is dismissed on the basis of procedural default does not render the petition not 'properly filed.'" *Habteselassie v. Novak,* 209 F.3d 1208, 1211–13 (10th Cir.2000).

***ii. Deeper inquiries into state law in the interest of comity.*** There is another side to the argument, however—one that favors the respondent's interpretation here—as exemplified by decisions of the Seventh, Ninth, and Eleventh Circuit Courts of Appeals. This court must therefore explore this side of the "split" en route to its determination of the meaning of "a properly filed application" in § 2244(d)(2).

This court begins its survey of decisions on this side of the split with decisions of the Eleventh Circuit Court of Appeals, because, in its most recent decision addressing the meaning of "properly filed," that court stated succinctly two differences between its interpretation and that of the courts on the other side of the split:

A motion is *not* properly filed if the state court denied it as untimely or successive. *See Webster v. Moore,* 199 F.3d 1256, 1258–60 (11th Cir.2000) (holding that a state motion was not properly filed if the state dismissed it as untimely); *Weekley v. Moore,* 204 F.3d 1083, 1086 (11th Cir.2000) (holding that a state

motion was not properly filed if the state dismissed it as successive).

*Nyland v. Moore,* 216 F.3d 1264, 1266 (11th Cir.2000) (emphasis added). This rule plainly distinguishes the interpretation of "a properly filed application" in the Eleventh Circuit from the rule applicable in, for example, the Fifth. *Compare Hall,* 216 F.3d at 520. In *Nyland,* the Eleventh Circuit Court of Appeals did not expound on the basis for its view of the meaning of "properly filed," because the court found that "the district court did not reach the question of whether Nyland's second state motion for post-conviction relief was properly filed, [and so] the question is not properly before us and must be remanded for the district court's consideration." *Id.*

The decisions cited in *Nyland,* however, are more informative on the rationale for the interpretation applied in the Eleventh Circuit. In *Webster v. Moore,* 199 F.3d 1256 (11th Cir.2000), the court noted the split in authority, and explained its reasons for favoring one interpretation over the other, while acknowledging what common ground existed, as follows:

> Federal courts have begun to struggle with the meaning of the term "properly filed" as contemplated by the statute, and have developed different interpretive approaches. One court concluded that "properly filed" entails not only some notion of procedural propriety but also a threshold inquiry into substantive merit, *see Valentine v. Senkowski,* 966 F.Supp. 239, 240–41 (S.D.N.Y.1997), but that decision has been recently overruled, *see Bennett v. Artuz,* 199 F.3d 116 (2d Cir.1999). Others have ruled that a "properly filed" state-court petition must comply only with the procedural requirements for filing, such as place, fee payment, and notice. Some opinions have clarified that these procedural formalities include state filing deadlines. *See Hoggro v. Boone,* 150 F.3d 1223, 1226 & n. 4 (10th Cir.1998); *Lovasz v. Vaughn,* 134 F.3d 146, 148–49 (3d Cir.1998). Conversely, other cases hold that they

do not include more complex state procedural doctrines relating to timeliness or repetitiveness. *See, e.g., Bennett,* 199 F.3d at 121 (ruling a state petition "properly filed" even though the state court found it procedurally barred under a rule barring collateral claims that could have been raised on direct appeal); *Villegas v. Johnson,* 184 F.3d 467, 467–73 (5th Cir.1999) (holding a state petition, dismissed as successive or as an abuse of the writ, "properly filed"); *Lucas v. Carter,* 46 F.Supp.2d 709, 711–12 (N.D.Ohio 1999) (concluding that a petition dismissed by the state court on res judicata grounds was "properly filed"); *Souch v. Harkins,* 21 F.Supp.2d 1083, 1084–88 (D.Ariz.1998) (observing that a seventh state postconviction petition "complied with all filing requirements" and therefore was "properly filed" despite the state court's conclusion that the argument raised in the petition had been waived). The legislative history of the provision offers no help in evaluating these interpretations. *See Galindo v. Johnson,* 19 F.Supp.2d 697, 705–06 (W.D.Tex.1998) (noting the absence of any clarifying history on the question).

> *We perceive two questions that must be resolved to apply the "properly filed" requirement to this case.* Neither has been reached in a published opinion from this circuit. *The first question is whether the state petition must meet state filing deadlines in order to toll the AEDPA statute of limitation, and here we agree with the holdings of the Third and Tenth Circuits in Lovasz and Hoggro that it must. See Hoggro,* 150 F.3d. at 1226; *Lovasz,* 134 F.3d at 148–49. The plain language of § 2244(d)(2) comports with this interpretation. Moreover, we can identify in the structure of AEDPA a guiding principle for this interpretation. That structure—including AEDPA's more robust codification of the exhaustion requirement, *see* 28 U.S.C. § 2254(b), and the high degree of respect it affords state adjudications of constitutional claims, *see* 28 U.S.C.

§§ 2254(d)-(e)—evinces a concern for federal-state comity closely analogous to that underlying the procedural default principles applied in federal habeas law. *See Coleman v. Thompson,* 501 U.S. 722, 729–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Villegas,* 184 F.3d at 470–71; *Lovasz,* 134 F.3d at 148. This concern further militates in favor of requiring compliance with state filing deadlines in the context of § 2244(d)(2). *See Lovasz,* 134 F.3d at 148–49.

The second question is whether a federal court should defer to a state court's application of state filing deadlines. Again, we find the close analogy between procedural default principles and § 2244(d)(2) compelling, and we see no principled reason to apply a lesser measure of deference to the state court in the context of § 2244(d)(2) than we apply in the context of procedural default questions. We therefore conclude that the state court's holding that [the petitioner's state *habeas*] petition was time-barred is due deference. Thus, Webster's . . . argument fails.

*Webster,* 199 F.3d at 1258–59 (footnotes omitted).[7] Thus, the Eleventh Circuit Court of Appeals looks not only at whether the state application, on its face, met state filing deadlines to determine whether the state application was "properly filed," a matter upon which most of the courts cited above (but not necessarily the Fifth Circuit Court of Appeals) would agree, but also looks at—and defers to—state court applications of state filing deadlines, invoking in support of its position the same interest in "comity" cited by courts on the other side of the split, but applying that interest as it is otherwise applicable to questions of "procedural default." *Id.*

Again, in *Weekley v. Moore,* 204 F.3d 1083 (11th Cir.2000), the Eleventh Circuit Court of Appeals recognized the split in authority over the interpretation of "properly filed," but this time as it related to "successive," rather than "untimely," state post-conviction relief applications. Because the decision in *Weekley* addresses significantly more appellate authority on the interpretation of "properly filed," this

7. In *Webster,* the petitioner's "alternative argument avoid[ed] the problems of his first by dropping the requirement that his third—untimely—[state] petition be 'properly filed.'" *Webster,* 199 F.3d at 1259. Nevertheless, the Eleventh Circuit Court of Appeals found that argument also failed:

> Webster relies on a new rule of appellate procedure made effective by the Florida Supreme Court on January 1, 1997. Under Fla. R.App. P. 9.140(j)(3)(B) and (C), as then amended, Florida habeas petitioners finally convicted before 1997 had until January 1, 1999 to file state habeas corpus petitions alleging ineffective assistance of appellate counsel. Webster argues that the creation of this new avenue of relief tolls the AEDPA limitations period until after a Florida prisoner has taken advantage of it. For Webster, this would mean that the AEDPA period was tolled from the January 1, 1997 effective date of the new rule through the denial of his 9.140 petition on July 8, 1997, a period sufficient to make his October 30 federal petition timely.
>
> We cannot accept this argument as consistent with any reasonable construction of § 2244(d)(2). Under § 2244(d)(2), even "properly filed" state-court petitions must

> be "pending" in order to toll the limitations period. A state-court petition like Webster's that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled. In effect, Webster argues not merely for the tolling of the period, but for its reinitiation. Section 2244(d) makes no such provision where the reason for reinitiation is creation of a new remedy under state law. Thus, Webster's second argument also fails.

*Webster,* 199 F.3d at 1259. The ultimate conclusion of the Eleventh Circuit Court of Appeals in *Webster* that a state post-conviction relief application begun only after expiration of the one-year "grace" period—that is, after the one-year period following the effective date of the AEDPA for state prisoners whose convictions became "final" prior to the effective date of AEDPA to file a federal *habeas* action—cannot "toll" the time for a federal *habeas* action, even if the state post-conviction relief action is timely under state law, is in accord with the decision of the Eighth Circuit Court of Appeals in *Jackson v. Dormire,* 180 F.3d 919, 920 (8th Cir.1999), as discussed above in section II.B.2.b. of this opinion.

court will again quote a substantial portion of the decision, which discusses the spit in authority as well as the rationale of the Eleventh Circuit Court of Appeals in reaching its interpretation:

The resolution of this appeal thus turns on whether a successive petition such as Weekley's is nonetheless a "properly filed application" under 28 U.S.C. § 2244(d)(2). The courts that have addressed the issue have reached differing results.

The phrase "properly filed application" is not defined in the AEDPA itself and the legislative history sheds little light on its meaning. *See Villegas v. Johnson,* 184 F.3d 467, 470 (5th Cir. 1999) (citing legislative history). *Some courts have construed the phrase narrowly to mean that the state post-conviction motion or petition complies with the bare minimum of procedural requirements such as time and place of filing.* On this view, if a prisoner managed to file his state petition within the applicable time limits and in the right court, his petition would be "properly filed." *Sometimes,* despite the lack of a clear (or any) definition of the phrase "properly filed application," *this construction is justified on the grounds that the plain meaning of the phrase is so unambiguous as to compel only the narrow interpretation. See Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998) ("[a]fter all, Congress chose the phrase 'a properly filed application,' one into which we do not read any requirement that the application be nonfrivolous"); *See also Villegas,* 184 F.3d at 470 (stating reluctance to go beyond "plain meaning of the phrase"). *Courts favoring the narrow interpretation also rely on principles of comity and on the exhaustion requirement to support their interpretation. See id.* at 472; *See also Bennett v. Artuz,* 199 F.3d 116 (2nd Cir.1999).

*Other courts, however, have interpreted the phrase "properly filed" more broadly, in accord with the purposes of the AEDPA limitations period and the qualification that state courts must be given the first opportunity to decide state prisoners' constitutional claims.* For example, in *Tinker v. Hanks,* 172 F.3d 990, 991 (7th Cir.1999), the Seventh Circuit held that an application for leave to file a successive state habeas petition was not a "properly filed application" under the AEDPA. The reasoning of the Seventh Circuit was that Congress could not have intended to allow prisoners to extend the limitations period indefinitely by filing repeated applications for leave. *Id.* The Court also noted that there was little reason to worry that the state and federal courts might reach differing results on whether a state petition is "properly filed" because the federal court can, in its discretion, stay the federal case while the state petition is pending. *Id.*

Similarly, the Ninth Circuit has held that a state petition is not "properly filed" if the petition is dismissed as successive under the state's procedural rules. *See Dictado v. Ducharme,* 189 F.3d 889, 892 (9th Cir.1999). The Court reasoned that the policy of deferring to state courts weighs in favor of requiring prisoners to comply with the full range of state procedural rules, including the rule regarding successive petitions. *Id.*

Though this precise issue has not been addressed in this Circuit, the Court has interpreted the phrase "properly filed" in the context of an untimely state petition. We held recently that a state petition is not "properly filed" when it fails to comply with state filing deadlines as applied by the state court. *See Webster v. Moore,* 199 F.3d 1256 (11th Cir. 2000). In *Webster,* we noted that the AEDPA demonstrates a concern for federal-state comity and deference to state determinations of constitutional claims. *See Webster* at 1258–1259 (concern for federal-state comity "militates in favor of requiring compliance with state filing deadlines in the context of § 2244(d)(2)").

*Because we are persuaded by the reasoning of the courts that have not deemed successive state court filings to be "properly filed," we extend Webster to prohibit tolling in the circumstances of this case. This extension is in accord with the AEDPA's purpose of encouraging state court exhaustion, while also not allowing procedurally defective motions, such as Weekley's successive motions, to toll the period for filing a federal habeas action.*

*Weekley,* 204 F.3d at 1085–86 (emphasis added). Thus, the Eleventh Circuit Court of Appeals specifically looks at both the applicable deadlines and procedural requirements and state-court determinations of whether those deadlines or requirements have been met, and moreover defers to state-court determinations of whether state applications violate state procedural rules prohibiting untimely or successive petitions.

As noted in *Weekley,* the Eleventh Circuit Court of Appeals relied on prior decisions of the Seventh and Ninth Circuit Courts of Appeals for its interpretation of "properly filed" within the meaning of § 2244(d)(2). As explained in *Freeman v. Page,* 208 F.3d 572 (7th Cir.2000), a more recent decision of the Seventh Circuit Court of Appeals, that court relies upon a rule that the way the state court treated the application determines whether the application was "properly filed" for purposes of § 2244(d)(2):

> Whether a collateral attack is "properly filed" can be determined in a straightforward way by looking at how the state courts treated it. If they considered the claim on the merits, it was properly filed; if they dismissed it for procedural flaws such as untimeliness, then it was not properly filed.

*Freeman,* 208 F.3d at 576; *Jefferson v. Welborn,* 222 F.3d 286, 288 (7th Cir.2000) (quoting this portion of *Freeman* as stating the rule for the meaning of "properly filed" in the Seventh Circuit). The court

in *Freeman* described this rule as an "objective" test, with the further virtue that "[t]he objective approach not only facilitates decision-making but also gives the parties a clear benchmark. Everyone knows exactly when the federal petition is due." *Id.*

The court in *Freeman* found that it had previously followed the "objective" approach in *Tinker v. Hanks,* 172 F.3d 990 (7th Cir.1999), *petition for cert. filed,* (Dec. 27, 1999) (No. 99–7682), which held that an unsuccessful application in state court for leave to file a second or successive collateral attack does not toll the time to commence a collateral attack in federal court:

> *Tinker* observed that, if the state court had permitted the filing, then the application would have been "properly filed" for purposes of § 2244(d)(2), but we held that when the state court does *not* permit the filing, that decision is conclusive under § 2244(d)(2). We did not ask whether *Tinker* had made a plausible showing; we asked only whether the state court deemed the filing proper under state law. A prisoner who seeks but does not receive a dispensation from state court—an authorization to file another petition in *Tinker,* a finding of "no culpable negligence" here—has not achieved a "properly filed" state collateral challenge.

*Freeman,* 208 F.3d at 576 (emphasis in the original). In choosing this "objective" rule, the Seventh Circuit Court of Appeals, first, rejected the contention that "the words 'properly filed' in § 2244(d)(2) do not take their meaning from state practice," and, second, rejected a more "subjective" meaning for "properly filed" based on whether the petitioner "offers a colorable argument for his position under state law, even if the state eventually rejects the petition on procedural grounds." *Id.* As to the "subjective" rule, the court observed, "[W]e are not authorized to rewrite the statute so that 'properly filed' becomes 'plausibly filed' or some equivalent phrase ('filed in good faith,' 'filed with a bonafide argument for the application or modifica-

tion of state law,' etc.).'' *Id.* The Seventh Circuit Court of Appeals concluded that adoption of such a "subjective" rule would create a conflict among the circuits, *id.*, which is true notwithstanding this court's view that there is already a split among the circuits, because no court has expressly adopted such a "plausibly filed" interpretation of "properly filed." However, in the undersigned's view, the interpretation of the Fifth Circuit Court of Appeals comes remarkably close to a "plausibly filed" rule, because it considers as "properly filed" any application that facially meets time and place filing requirements—that is, filings that to appearances, or only "plausibly," were "properly filed"—even if the state court ultimately concludes that the state application is untimely or violates a "successive petitions" limitation. *See Hall,* 216 F.3d at 519; *Dilworth,* 215 F.3d at 500–01; *Smith,* 209 F.3d at 384–85.

Returning to the decision of the Seventh Circuit Court of Appeals in *Freeman,* the decision addressed what the undersigned has described as the *"Lovasz* conundrum." *See Lovasz,* 134 F.3d at 148 (expressing concern over whether an action gains or loses "properly filed" status as it proceeds through the state appeals process, if holdings differ at the various levels); *see supra* at page 1128–29. The court in *Freeman* found that the decision in *Tinker* "added that a prisoner who wants to pursue state relief while assuring an entitlement to federal relief can protect himself by filing in both courts," and that, in such circumstances, the federal action should be stayed while the state court decides what to do. *Freeman,* 208 F.3d at 577 (citing *Tinker,* 172 F.3d at 991). The court in *Freeman* observed that a federal district court's dismissal of the federal *habeas* action, rather than a stay, in such circumstances would have been reversed on appeal, because "that step could jeopardize the timeliness of a collateral attack." *Id.*

A corollary to the "way it was treated" rule in the Seventh Circuit is the "last reasoned decision" rule, which is explained in *Jefferson v. Welborn,* 222 F.3d 286 (7th Cir.2000). This corollary is invoked when the last order that disposes of a petitioner's state post-conviction relief application says nothing about its basis. *Jefferson,* 222 F.3d at 288:

> Sometimes, of course, we will not have the benefit of the two separate orders that are present in this case. In those instances, the question is how to treat an order that says nothing about its basis (which is the case with most orders from supreme courts that are denying discretionary review). We think that the Supreme Court's decision in *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), points the way to the answer. In that case, the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Id.* at 263, 109 S.Ct. 1038 (internal quotations omitted). Similarly here, *if the last word from the state supreme court does not reveal whether a procedural bar or a substantive lack of merit motivated its ruling, we will presume it is the latter for purposes of sec. 2244(d), unless "the last reasoned opinion on the claim explicitly impose[d] a procedural default," which the denial of review by the state supreme court does not disturb. See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

*Jefferson,* 222 F.3d at 288. The court in *Jefferson* concluded that, in the case before it, the last reasoned decision, by the state supreme court, indicated that the state supreme court was *not* relying on timeliness grounds to reject the petition, which "was enough to make [the petitioner's] appeal in his state proceeding one that was properly filed for purposes of computing his time for filing a petition for collateral relief in federal court." *Id.* This

was so, because, "in the sense that matters, the Illinois Supreme Court considered Jefferson's claim 'on the merits'; hence, it was 'properly filed' for purposes of sec. 2244(d)(2)." *Id.* at 289.

The Ninth Circuit Court of Appeals appeared to apply a similar sort of "last reasoned decision" rule in *Saffold v. Newland,* 224 F.3d 1088 (9th Cir.2000), its most recent consideration of whether a state post-conviction relief application was "properly filed" within the meaning of § 2244(d)(2). The Ninth Circuit Court of Appeals noted that it had previously held that "the AEDPA statute of limitations is tolled for 'all of the time during which a state prisoner is attempting, through *proper use* of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.'" *Saffold,* 224 F.3d at ——, 2000 WL 973282 at *2 (emphasis added) (quoting *Nino v. Galaza,* 183 F.3d 1003, 1006 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1846, 146 L.Ed.2d 787 (2000)). The undersigned finds this definition unenlightening, because defining *"properly* filed" in terms of whether the petitioner was attempting to exhaust state collateral remedies "through *proper use* of state court procedures" adds virtually nothing to the definition of "properly filed," instead merely moving the "chameleon" modifier to a different place in the definition. Nevertheless, the application of the rule by the Ninth Circuit Court of Appeals demonstrates that the court was applying a "last reasoned decision" rule akin to that employed in the Seventh Circuit.

Specifically, the court in *Saffold* confronted a state supreme court decision that stated the petitioner's state *habeas corpus* petition was " 'DENIED on the merits and for lack of diligence.'" *Id.* at ——, 2000 WL 973282 at *3 (quoting the state supreme court ruling). This disposition, the court concluded in *Saffold,* demonstrated that the state supreme court "did address

the merits of Saffold's claim." *Id.* "[W]here the whole purpose of the tolling requirement is to permit state courts to address the merits of the petitioner's claim," the *Saffold* court "decline[d] to adopt a rule that would require Saffold to have filed his federal petition before the California Supreme Court ruled on the merits of his claim." Even if the court considered the state supreme court's reference to lack of diligence separately, the court found that there was no failure of the "properly filed" requirement, because "the California Supreme Court had applied its untimeliness bar only after considering to some degree the underlying federal constitutional questions raised." *Id.* The court held that "such an untimeliness ruling did not constitute an independent state ground of decision," because the court "fail[ed] to see why an untimeliness ruling entangled with the federal constitutional merits, which is insufficient to cause a default. of a federal claim, should be sufficient to defeat tolling of the AEDPA limitation." *Id.*

Similarly, the seminal decision of the Ninth Circuit Court of Appeals on the meaning of "a properly filed application," *Dictado v. Ducharme,* 189 F.3d 889 (9th Cir.1999), begins with the *Lovasz* decision of the Third Circuit Court of Appeals, but reads it to permit a far deeper inquiry into compliance with state requirements than this court understood *Lovasz* to permit. Moreover, the decision in *Dictado* ultimately adopts something much nearer the interpretation of the Seventh and Eleventh Circuit Courts of Appeals.

Relying on *Lovasz,* Dictado argues that we must treat as "properly filed" any state application that appears on its face to comply with the state's basic procedural rules. We disagree. We read "a properly filed application" to mean an application submitted in compliance with the procedural laws of the state in which the application was filed. This reading is consistent with *Lovasz.* *Lovasz* does not suggest that the standard for a "properly filed" application

under the AEDPA is more lenient than the relevant state procedural law. Here, the Washington Supreme Court held that under Washington law, Dictado's fourth personal restraint petition was procedurally improper. *To hold that Dictado's procedurally defective application was "properly filed" would require us to ignore the explicit holding of the Washington Supreme Court.*

Dictado's proposed definition of a "properly filed application" lacks any limitation. The AEDPA allows a state prisoner to toll the limitations period for the time during which a "properly filed application" is pending in state court. Had Congress intended to toll the statute of limitations for the period during which even improper applications were pending in state court, it would not have included the "properly filed" limitation. *Cf. Tinker v. Hanks,* 172 F.3d 990, 990–91 (7th Cir.1999) (rejecting argument that application for leave to commence a state post-conviction relief proceeding is a "properly filed" application because "Congress could not have intended that the time for filing the federal action be tolled indefinitely by the simple expedient of filing repeated applications for leave to file state post-conviction relief").

Dictado's state petition did not comply with Washington's rules governing the time of filing. Consequently, we hold that the application was not "properly filed" within the meaning of the AEDPA. Dictado's 1997 petition did not toll the statute of limitations period.

*Dictado,* 189 F.3d at 892 (footnote omitted). The court in *Dictado* specifically noted that it "d[id] not reach the issue, addressed in *Lovasz, see* 134 F.3d at 149, whether a frivolous but otherwise procedurally proper filing in state court is 'properly filed' for AEDPA purposes." *Id.* at 892 n. 2. However, contrary to *Lovasz,* the interpretation of "a properly filed application" in the Ninth Circuit depends upon the state court's ultimate disposition of the specific state application.

■■■ *iii. "A properly filed application" in light of AEDPA's purpose and policy.* This court agrees that the interpretation of "a properly filed application" in light of AEDPA's purpose and policy, *see Doth,* 159 F.3d at 333 (ambiguous statutory language must be interpreted in light of the purpose and policy of the enactment in which it appears), must take into account the principles of "comity" and deference to state court determinations and the policy of "exhaustion" of state remedies that motivated the AEDPA. *See, e.g., Whitmore v. Kemna,* 213 F.3d 431, 433 (8th Cir.2000) (one of the purposes of the AEDPA amendments was to effect the intent of Congress to expedite habeas proceedings with appropriate deference to state court determinations) (citing *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000)); *Mills,* 187 F.3d at 883 ("There is a longstanding federal policy that habeas petitioners must exhaust their state court remedies.") (citing *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)). As the Supreme Court has explained, "the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Similarly, federal *habeas* law has long shown a concern for comity in its application of procedural default principles, *see id.* at 729–32, 111 S.Ct. 2546, and that concern continues under the AEDPA, as "[c]omity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *O'Sullivan v. Boerckel,* 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Moreover, in *Mills v. Norris,* 187 F.3d 881 (8th Cir.1999), the Eighth Circuit Court of Appeals interpreted "pending" within the meaning of § 2244(d)(2) in such a way as to "harmonize" the limitations tolling provision with the exhaustion requirement of

§ 2254(c), noting that to do so was "sound as a matter of statutory construction" and would "furthe[r] the principles of comity." *Mills*, 187 F.3d at 884. That same "sound" approach to statutory construction, and consideration of those same principles, should apply to interpretation here of other language in the same statute addressed in *Mills*.

■ "Comity" and "deference" to state courts, as well as the principles of "exhaustion" and "procedural default," lead this court to reject an interpretation of § 2244(d)(2) that permits only a limited inquiry into state law to determine whether a state post-conviction relief application is "properly filed." Such a limited inquiry evinces a peculiar view of "comity," because it permits a federal court to entertain as "properly filed" a state petition for post-conviction relief that a state court has ultimately determined is barred on procedural grounds. *See Dictado*, 189 F.3d at 892 ("To hold that Dictado's procedurally defective application was 'properly filed' would require us to ignore the explicit holding of the Washington Supreme Court."). The purpose of the rule of comity is to "reduc[e] friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *Boerckel*, 526 U.S. at 845, 119 S.Ct. 1728 (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)). The same sort of "unseemliness" would be apparent if a federal district court ignores a state court's determination that a state post-conviction relief application does not comply with state procedural requirements, and holds instead that the application was "properly filed." In other words, this court finds, at best, a "false comity" in an interpretation of § 2244(d)(2) that treats *all* untimely, successive, or abusive post-conviction relief applications as "properly filed," on the ground that state procedural rules *might*

permit such applications, *if* certain conditions are met, but ignores a state court's determination that a specific post-conviction relief application is indeed procedurally barred. *Contra Lovasz*, 134 F.3d at 148; *Villegas*, 184 F.3d at 470; *Hall*, 216 F.3d at 520; *Dilworth*, 215 F.3d at 500–01; *Habteselassie*, 209 F.3d at 1211–13.

■ Instead, this court adopts the interpretation permitting a deeper inquiry, as explained by the Seventh, Ninth, and Eleventh Circuit Courts of Appeals. In this court's view, "comity" is better served by acknowledging the actual final determination of the state courts on whether a specific post-conviction relief application is procedurally barred, because such an interpretation not only shows deference to the state's procedural requirements and limitations, but also shows deference to the state courts' determination of whether grounds exist to excuse a procedural failing. *See Webster*, 199 F.3d at 1259; *Weekley*, 204 F.3d at 1085–86; *Freeman*, 208 F.3d at 576; *Jefferson*, 222 F.3d at 288; *Saffold*, 224 F.3d at 1089–90. As the Eleventh Circuit Court of Appeals explained, because "we find the close analogy between procedural default principles and § 2244(d)(2) compelling, and we see no principled reason to apply a lesser measure of deference to the state court in the context of § 2244(d)(2) than we apply in this context of procedural default questions," the federal court should defer to a state court's *application* of state filing requirements in a particular case. *See Webster*, 199 F.3d at 1259.

Nor is this court persuaded that an interpretation of "a properly filed application" must permit petitioners to attempt to "exhaus[t] all their claims in state court, even by means of a second or subsequent petition for post-conviction relief," as the Third Circuit Court of Appeals suggested in *Lovasz*, 134 F.3d at 148. As the Supreme Court recently explained in *O'Sullivan v. Boerckel*, that is not what the exhaustion doctrine or the comity in-

terest that drives it require. *See Boerckel*, 526 U.S. at 846, 119 S.Ct. 1728 (observing that the exhaustion rule announced in that case "serves the comity interests that drive the exhaustion doctrine"). In *Boerkel*, the Court considered whether, in order to exhaust state remedies, the petitioner was required to present to the state supreme court three claims raised in his amended federal *habeas* petition that he had not included in his petition for leave to appeal his conviction to the state supreme court. *Id.* at 843, 119 S.Ct. 1728. The Court examined the language of § 2254(c), which deems unexhausted any claim the petitioner "has the right under the law of the State to raise, by any available procedure." *Id.* at 844, 119 S.Ct. 1728 (quoting § 2254(c)). The Court noted that, "although this language could be read to effectively foreclose habeas review by requiring a state prisoner to invoke any possible avenue of state court review, we have never interpreted the exhaustion requirement in such a restrictive fashion." *Id.* The Court noted that it had not required *habeas* petitioners to file repetitive state court petitions or to invoke extraordinary state remedies. *Id.* Rather, the Court concluded,

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*Boerckel*, 526 U.S. at 845, 119 S.Ct. 1728. The Court concluded, "Comity, in these circumstances, dictates that Boerckel use the State's established appellate review procedures before he presents his claims to a federal court." *Id.* Moreover, the Court concluded that, where the petitioner had failed to present his three federal *habeas* claims to the state supreme court in a timely fashion, he had procedurally defaulted those claims. *Id.* at 848, 119

S.Ct. 1728 (citing *Coleman*, 501 U.S. at 731–32, 111 S.Ct. 2546). Thus, the Supreme Court's decision in *Boerckel* demonstrates that it is not necessary to interpret the "properly filed" language in § 2244(d)(2), even in the interest of "comity" and "exhaustion" principles, in such a way as to preserve a petitioner's claims for federal review at all costs by treating as "properly filed" claims that are procedurally defaulted by failure to comply with, or take advantage of, state procedures.

 This court agrees generally with the proposition that the phrase "a properly filed application" does not permit consideration of "the merits" of the application, because, had that been Congress's intention, Congress could have used language such as "a non-frivolous application" in § 2244(d)(2) instead of "a properly filed application." *See, e.g., Lovasz*, 134 F.3d at 149; *Villegas*, 184 F.3d at 469–70; *see generally Hoffman*, 59 F.Supp.2d at 871 n. 6 (" '[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.' ") (quoting *Connecticut Nat'l Bank*, 503 U.S. at 253, 112 S.Ct. 1146). However, the conclusion in *Villegas* that its reading of § 2244(d)(2)—which permits federal courts to look only at facial filing requirements—comported with principles of comity and exhaustion, because the AEDPA "evinces no congressional intent to embroil federal courts in problematic determinations of the merit of state court filings," *Villegas*, 184 F.3d at 471, is only persuasive if "merits" somehow includes procedural default rules and limitations on the assertion of claims that were not properly preserved or were already raised in previous petitions. This court believes that the Fifth Circuit Courts of Appeals went astray by giving an overly broad meaning to "the merits" of a post-conviction relief application. That court included within the concept of determinations on "the merits" dismissals of applications that might be deemed "meritless" or "frivolous" for non-compliance with state *procedural* limitations, rather

than recognizing that "the merits" refers to the *substantive* question of whether a claim involves a factual and legal basis for relief. *See Villegas*, 184 F.3d at 471 (reading exclusion of consideration of "the merits" in *Lovasz* to go to the question of whether a post-conviction relief motion was an improper second or subsequent petition for post-conviction relief); *and compare Jefferson*, 222 F.3d at 288 (distinguishing between a "substantive lack of merit" and a "procedural" failing). In other words, the Fifth Circuit Court of Appeals failed to distinguish between a substantively meritless claim and a claim that is potentially meritorious, but procedurally barred.

The court notes that neither the Third Circuit Court of Appeals in *Lovasz*, nor the district court in *Hughes*, upon which the court in *Lovasz* relied, made this mistake of confusing procedural failings with "the merits" of the post-conviction relief application. In *Hughes*, the court was indeed presented with a seventh motion for post-conviction relief. *Hughes*, 967 F.Supp. at 777. However, the *Hughes* court identified the conundrum of when the application was or was not "properly filed" in the context of dismissal on the *substantive* merits—specifically, whether the claim was "frivolous," because the petitioner could show no factual support for his contention that a purportedly exculpatory police report was authentic—not in the context of a dismissal based on a *procedural* bar to second or subsequent petitions for post-conviction relief. *See id.* at 778–79. In *Lovasz*, the reference to exclusion of consideration of "the merits" from the "properly filed" inquiry also related to the substantive merits of the post-conviction relief application. *See Lovasz*, 134 F.3d at 149. The discussion of whether "the merits" of the application were relevant to the "properly filed" determination was in addition to, and independent of, the court's conclusion that an application is "properly filed" if it "is one submitted according to the state's procedural requirements, such as the rules governing

the time and place of filing." *Id.* at 148. The fact that the application was a second or subsequent application did not negate this conclusion, because the court reasoned that the Pennsylvania Supreme Court had announced strict rules regarding granting such applications, but nevertheless allowed them to be filed and sometimes granted relief upon them. *Id.* at 148–49. This last point, however, is the one on which the present court differs from the Third Circuit Court of Appeals.

If a federal court relies upon a state court's actual determination of untimeliness or some other procedural bar, as suggested by the Seventh, Ninth, and Eleventh Circuit Courts of Appeals, the federal court is in no way "embroiled" in a determination that properly belongs to the state courts. *Contra Villegas*, 184 F.3d at 471. Instead, by relying on the way the state courts resolve the issue of any procedural bar in a specific case, the federal court stays out of the matter and also shows the state courts' determination the deference it is due.

█ These conclusions bring this court to consideration of the "*Lovasz* conundrum," which revolves around when a state post-conviction relief application ceases to be "properly filed." *See Lovasz*, 134 F.3d at 148 (expressing concern over whether an action gains or loses "properly filed" status as it proceeds through the state appeals process, if holdings differ at the various levels); *see supra* at page 1128–29. Assuming that the issue is whether a state post-conviction relief application gains or loses "properly filed" status upon differing determinations of the applicability of a *procedural* bar, as the application proceeds through the state appeals process, *compare Hughes*, 967 F.Supp. at 778–79 (considering the question in terms of differing determinations on the *substantive* merits), application of the "way it was treated" rule simply eliminates the conundrum: If the final, reasoned determination is that the post-conviction relief application was pro-

cedurally barred, it was *never* "properly filed." Even if this determination comes after the petitioner's time to file a federal *habeas* petition under § 2244(d)(1) has already run, in the absence of tolling pursuant to § 2244(d)(2), the Supreme Court's decision in *Boerckel* demonstrates that this result, which imposes a procedural default in the federal *habeas* action as the result of failure to follow state procedure in state proceedings, is countenanced under federal *habeas* law. *See Boerckel,* 526 U.S. at 848, 119 S.Ct. 1728. However, as the Seventh Circuit Court of Appeals suggested in *Freeman,* federal *habeas* claims that are already properly exhausted can be "saved" for federal review by timely filing of a federal *habeas* action, which should then be held in abeyance until the state court determines whether additional claims have been asserted in a "properly filed" post-conviction relief application. *Freeman,* 208 F.3d at 577 (citing *Tinker,* 172 F.3d at 991). The court in *Freeman* observed that a federal district court's dismissal of the federal *habeas* action, rather than a stay, in such circumstances would have been reversed on appeal, because "that step could jeopardize the timeliness of a collateral attack." *Id.; see also Morris,* 187 F.3d at 342 (a decision of the Third Circuit Court of Appeals concluding that, even if the federal district court were to hold the federal *habeas* action in abeyance, such a course would not "save" the petitioner's opportunity to seek federal review on unexhausted claims, because, if the state court ultimately dismissed the state application as untimely, that state procedural bar would also bar relief on the federal petition, unless the petitioner could show "cause and prejudice"). Waiting for the state courts to resolve the question of whether the petitioner's state application complies with state procedural requirements and limitations avoids the conundrum described in *Lovasz.*

Thus, the court concludes that the policy of deferring to state courts, evident in the AEDPA and federal *habeas* law, weighs in favor of an interpretation of the "properly filed" language of § 2244(d)(2) that requires federal *habeas* petitioners to comply with the full range of state procedural rules, *see Dictado,* 189 F.3d at 892, and more specifically still, requires the federal court to recognize and defer to any final state-court determination that a specific state post-conviction relief application was not "properly filed" under state procedural rules establishing the time or requirements for such applications, including determinations that the state application is time-barred, procedurally defaulted, or violates limits on second or successive petitions. *See Webster,* 199 F.3d at 1259; *Weekley,* 204 F.3d at 1085–86; *Freeman,* 208 F.3d at 576; *Jefferson,* 222 F.3d at 288; *Saffold,* 224 F.3d at 1089–90. Although the court is concerned that this interpretation of § 2244(d)(2), like other rules governing *habeas corpus* actions, "increasingly elevates tortuous and tangled procedural impediments over fundamental fairness," *Lee v. Kemna,* 213 F.3d 1037, 1039 (8th Cir.2000) *(per curiam )* (Bennett, Chief District Judge, sitting by designation, dissenting), the court nevertheless concludes that it is the interpretation most in accord with the plain meaning of the statute and the purposes and policies of § 2244(d), the AEDPA, and federal *habeas* law generally.

### 4. Was Rouse's state post-conviction relief application "properly filed"?

It remains for this court to apply its interpretation of the "properly filed" language of § 2244(d)(2) to Rouse's state post-conviction relief application to determine whether that state application tolled the time for Rouse to file his federal *habeas* petition beyond his "grace" limitations deadline of April 24, 1997. Again, Rouse filed an application for state post-conviction relief on or about April 6, 1990, and a supplemental application on April 2, 1993. On March 11, 1997, the Iowa District Court for Woodbury County granted the respondent's motion for summary judg-

ment on the application on the ground that two of the issues raised therein were fully litigated on direct appeal, and three others were not raised on direct appeal, so that Rouse was precluded from raising any of his claims in a post-conviction relief proceeding. In the alternative, the district court concluded that the claims were without merit. The Iowa Court of Appeals affirmed summary judgment in favor of the respondent in an unreported decision filed on October 29, 1998, specifically finding that the claims were barred pursuant to IOWA CODE § 822.8 and that Rouse had failed to show "cause" and "prejudice," in the form of ineffective assistance of appellate counsel, for the failure to raise the unlitigated claims on direct appeal. The Iowa Supreme Court denied Rouse's request for further review on January 4, 1999. Rouse's present federal action for *habeas corpus* relief pursuant to 28 U.S.C. § 2254 followed on April 6, 1999, nearly two years after his "grace" deadline for a federal *habeas* appeal, in the absence of any "tolling," and nine years after his post-conviction relief application was filed.

Here, "[w]hether [Rouse's] collateral attack is 'properly filed' can be determined in a straightforward way by looking at how the state courts treated it," *Freeman,* 208 F.3d at 576, and more specifically, at how his post-conviction relief application was treated in "the last reasoned decision," *Jefferson,* 222 F.3d at 288, that of the Iowa Court of Appeals, filed on October 29, 1998, which affirmed the district court's grant of the respondent's motion for summary judgment. In that "last reasoned decision, the Iowa Court of Appeals specifically found that Rouse's claims were barred pursuant to IOWA CODE § 822.8" and that Rouse had failed to show "cause" and "prejudice," in the form of ineffective assistance of appellate counsel, for the failure to raise the unlitigated claims on direct appeal. *See Rouse v. State,* No. 8-451/97-

0626, slip op. at 3–4 (Iowa Ct.App. Oct. 29, 1998).

The provision of Iowa law upon which the Iowa Court of Appeals relied in granting summary judgment in favor of the respondent on Rouse's post-conviction relief application provides as follows:

**822.8. Grounds must be all-inclusive**

All grounds for relief available to an applicant under this chapter must be raised in the applicant's original, supplemental or amended application. *Any ground finally adjudicated or not raised,* or knowingly, voluntarily, and intelligently waived *in the proceeding that resulted in the conviction or sentence, or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application,* unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

IOWA CODE § 822.8 (emphasis added). Section 822.8 "proscribes relitigation 'in a postconviction proceeding [of] any ground which was finally adjudicated on direct appeal.'" *Wyldes v. Hundley,* 69 F.3d 247, 250 (8th Cir.1995) (quoting *Armento v. Baughman,* 290 N.W.2d 11, 12 (Iowa 1980)), *cert. denied,* 517 U.S. 1172, 116 S.Ct. 1578, 134 L.Ed.2d 676 (1996); *Stewart v. Nix,* 31 F.3d 741, 743 (8th Cir.1994). In addition, "Iowa courts have … consistently applied § 822.8 to preclude consideration of claims that were either waived or not raised during direct review." *Id.* at 253 (citing *Washington v. Scurr,* 304 N.W.2d 231, 235 (Iowa 1981), and *Carroll v. State,* 466 N.W.2d 269, 271–72 (Iowa Ct.App.1990)). Moreover, the Iowa Supreme Court has "interpreted section 822.8 to impose a burden upon a postconviction applicant to show sufficient reasons why any ground for relief asserted in a postconviction relief petition was not previously asserted on direct appeal. If the burden is not met, the grounds may not be asserted in a postconviction relief petition." *Bugley v. State,* 596 N.W.2d 893, 896 (Iowa 1999). This statute plainly im-

poses a procedural bar to certain claims, without regard to whether those claims otherwise have *substantive* merit in fact and law. *Cf. Lovasz*, 134 F.3d at 149 (prohibiting federal courts from considering "the merits" of a state post-conviction relief application to determine whether it was "properly filed"); *Villegas*, 184 F.3d at 469–70 (same); *and compare Jefferson*, 222 F.3d at 288 (distinguishing between a "substantive lack of merit" and a "procedural" failing). Thus, Rouse's state post-conviction relief application did not comply with the full range of state procedural rules. *See Dictado*, 189 F.3d at 892. As a matter of Iowa law, Rouse's post-conviction relief application was *not* "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2), and thus did not toll the time for him to file his federal *habeas* petition beyond the "grace" deadline of April 24, 1997.[8] *See Peterson*, 200 F.3d at 1204 (prisoners convicted before the effective date of the AEDPA had one year, until April 24, 1997, to file a federal *habeas* action, plus any additional time during which the deadline was "tolled"); *Mills*, 187 F.3d at 882 (one-year "grace" deadline); *Ford*, 178 F.3d at 523 (same); *Moore*, 173 F.3d at 1135–36 (same); *Nichols*, 172 F.3d at 1073 (same). Consequently, the present action must be dismissed as untimely and procedurally barred.[9]

## III. CONCLUSION

The November 9, 1999, referral of this matter to the magistrate judge is hereby withdrawn. The respondent's November 5, 1999, motion for summary judgment is granted. Rouse's April 6, 1999, petition for *habeas corpus* relief is dismissed as untimely and procedurally barred under 28 U.S.C. § 2244(d)(1) and § 2244(d)(2).

**IT IS SO ORDERED.**

---

8. Rouse could have filed a timely, "protective" federal *habeas corpus* petition within the "grace" deadline, had he recognized that his state post-conviction relief application was not "properly filed" when the Iowa District Court granted the respondent's motion for summary judgment on the application on March 11, 1997, on the ground that it was procedurally barred by Iowa Code § 822.8.

9. In light of this conclusion, the court does not reach the respondent's additional grounds for summary judgment on Rouse's federal *habeas* action.