In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2825

Willie Freeman,

Petitioner-Appellant,

v.

James H. Page, Warden,
Stateville Correctional Center,

Respondent-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 98-CV-2247--Michael P. McCuskey, Judge.

Argued January 14, 2000--Decided March 28, 2000

Before Flaum, Easterbrook, and Ripple, Circuit Judges.

Easterbrook, Circuit Judge. Statutes of limitations for collateral relief in federal court are part of the Antiterrorism and Effective Death Penalty Act. A one-year period for most state prisoners begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review". 28 U.S.C. sec.2244(d)(1)(A). For Willie Freeman, that means either October 6, 1994, when the Supreme Court of Illinois denied his petition for leave to appeal, or January 4, 1995, ninety days later (and the last day on which he could have filed a petition asking the Supreme Court of the United States to issue a writ of certiorari). Which of these is "the conclusion of direct review" is a question left open in Gendron v. United States, 154 F.3d 672, 674 n.2 (7th Cir. 1998), and one we shall not have to tackle here. Freeman did not commence his federal collateral attack until October 22, 1998, about four years later. The district court dismissed his petition as untimely, relying on McClain v. Page, 36 F. Supp. 2d 819 (C.D. Ill. 1999). But Freeman contends that much of the intervening period should not be counted toward his year to file.

The AEDPA took effect on April 24, 1996, and we stated in Lindh v. Murphy, 96 F.3d 856, 865-66

(7th Cir. 1996), reversed on other grounds, 521 U.S. 320 (1997), that no petition filed by April 23, 1997, may be dismissed as untimely. Gendron took this liberality one step further by holding that all delay prior to April 24, 1996, is excluded from the calculation. Thus although by his own calculation Freeman accumulated more than a year of countable time before April 24, 1996, and did not file by April 23, 1997, Gendron requires us to ignore all of the pre-AEDPA time. It is as if "the date on which the judgment became final" were April 24, 1996. Freeman took two and a half years more to file under 28 U.S.C. sec.2254, but he insists that most of that time is excludable under 28 U.S.C. sec.2244(d)(2):

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Freeman commenced a collateral attack in Illinois court on November 22, 1995, and it remained pending until October 31, 1997, when the state's court of appeals affirmed the order denying his petition. People v. Freeman, No. 4-96-0484 (Ill. App. 4th Dist. Oct. 31, 1997). Freeman then waited almost an entire additional year to file his federal collateral attack, but given Lindh and Gendron he acted in time--if, and only if, the application for collateral relief in state court was "properly filed." The district judge held that it was not "properly filed" because the state judges did not address Freeman's petition on the merits, but instead dismissed it as untimely under Illinois law. Freeman does not contest the district court's major premise that an untimely petition is not "properly filed" for the purpose of sec.2244(d)(2). Accord, Bennett v. Artuz, 199 F.3d 116, 121-23 (2d Cir. 1999) ("properly filed" means "an application for state post-conviction relief recognized as such under governing state procedures"); Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998) (a "properly filed application" is "one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing"); Holloway v. Corcoran, 980 F. Supp. 160 (D. Md. 1997) (an application is "properly filed" only if timely), appeal dismissed, 1998 U.S. App. Lexis 19174 (4th Cir. Aug. 14, 1998) (adopting the district court's reasoning); Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999) (a "properly filed application" is "one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing"); Austin v. Mitchell, 200 F.3d 391, 395 n.2 (6th Cir. 1999) (an application is "properly

filed" only if timely); Dictado v. Ducharme, 189 F.3d 889, 892 (9th Cir. 1999) ("properly filed application" means "an application submitted in compliance with the procedural laws of the state in which the application was filed"); Hoggro v. Boone, 150 F.3d 1223, 1226 & n.4 (10th Cir. 1998) (a "properly filed" petition must be "timely"); Webster v. Moore, 199 F.3d 1256, 1258 (11th Cir. 2000) (an application is "properly filed" only if timely). Still, Freeman insists, we should treat his petition as timely despite the state courts' resolution of the state-law dispute.

In the fall of 1995, when Freeman filed his petition in state court, Illinois law contained this timeliness rule:

No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or issuance of the opinion from the Illinois Supreme Court or 6 months after the date of the order denying certiorari by the United States Supreme Court or the date for filing such a petition if none is filed or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his culpable negligence.

725 ILCS 5/122-1(c)./* Because leave to appeal had been denied on October 6, 1994, Freeman had six months, or until April 6, 1995, to get a collateral attack under way unless he could show that the delay (until November 22, 1995) "was not due to his culpable negligence." He attempted to do this by alleging that Stateville Correctional Center, the prison where he has been held, "was on lock-down for a substantial period of time prior to and after July 1, 1995." Both the state's circuit court and its court of appeals held this allegation too vague; because Freeman did not provide particulars (for which days was the prison locked down? how did the lockdown prevent him from filing?), the state judges held that they could not credit Freeman's assertion that prison officials are to blame for the tardiness. That interpretation of what it means to show "that the delay was not due to . . . culpable negligence" is a matter of state law only, and we must accept the state court's answer. Gilmore v. Taylor, 508 U.S. 333 (1993); Estelle v. McGuire, 502 U.S. 62 (1991); Pulley v. Harris, 465 U.S. 37 (1984); Smith v. Phillips, 455 U.S. 209 (1982); Henry v. Mississippi, 379 U.S. 443, 447 (1965); Garner v. Louisiana, 368 U.S. 157, 166 (1961); Gryger v. Burke, 334 U.S. 728, 731 (1948); Bute v. Illinois, 333 U.S. 640,

668 (1948); Herbert v. Louisiana, 272 U.S. 312, 316 (1926). The way in which "not due to . . . culpable negligence" works under Illinois law is not an abstraction declared in some other case, of questionable application to Freeman's. In litigation between Freeman and the state, state judges concluded that Freeman failed to prove that delay was "not due to his culpable negligence". Normal principles of issue preclusion (collateral estoppel) prevent Freeman from getting a second opinion.

Freeman's submission in state court placed special emphasis on July 1, 1995, because sec.5/122-1 changed dramatically that day. On and after July 1, 1995, a state prisoner must act within the shortest of the multiple periods mentioned in the statute. Until then, the prisoner could choose the longest period--which for Freeman ended on December 1, 1995, three years after his conviction. Freeman's petition in late November would have been timely under the old version of the statute, and it may well be that Freeman filed then because he did not realize that the statute had been amended. But he recognized in state court that the amendment applies to him, just as the state's appellate court held. See also People v. Bates, 124 Ill. 2d 81, 124 Ill. Dec. 407, 529 N.E.2d 227 (1988) (holding that an earlier amendment to sec.5/122-1 applies to all prior convictions). Bates concluded that the statutory escape hatch (the petitioner's ability to show that "delay was not due to . . . culpable negligence") justifies immediate application. What is more, "immediate" in law is not immediate in fact. Unlike the AEDPA, which took effect as soon as the President signed the enrolled bill, the amendment to sec.5/122-1 had a deferred effective date. See Illinois Constitution Art. IV sec.10. The change was made by sec.15 of Public Act 88-678, II Laws of Illinois 2732 (1994), which was approved by the legislature on November 15, 1994, and signed by the Governor on December 15. Id. at 2735. Persons affected by the law had six and a half months to file under the old law--and, as the statute's main period of limitations is six months (from the final appellate decision), this allowed ample maneuvering room to all those who paid attention. Most prisoners don't keep up with the session laws (though this one might have given rise to scuttlebutt), but a state may decide the effective dates of its laws, provided that they are published--and Illinois publishes its session laws, though they are not as widely available as the compiled statutes. Freeman had almost nine months between the denial of his petition for leave to appeal and the effective date of the amendment, three months more than prisoners since have had to file collateral attacks.

Freeman now contends that his collateral attack was "properly filed" because the Constitution of the United States required Illinois to accept it, but no case of which we are aware holds that states must give (say) a year's notice of impending statutory changes. As we have observed already, Freeman had nine months to act, 6 months of which passed after the Governor signed the amendment. States may abolish collateral review of criminal judgments. Indeed, as we noted in Lindh, 96 F.3d at 867-68, even the national government, to which the Suspension Clause of the Constitution applies, may eliminate collateral review of final judgments; the writ that may not be suspended is the pretrial writ to test the Executive's power to hold a suspect without trial. No prisoner has a constitutional entitlement to further review of the final judgment in a criminal case. Illinois made collateral review harder to obtain but did not abolish it, and Freeman has no constitutional complaint.

Perhaps, however, the words "properly filed" in sec.2244 (d)(2) do not take their meaning from state practice. Freeman makes a feeble argument along these lines, reminding us that the federal law of forfeiture has a cause-and-prejudice exception. See Wainwright v. Sykes, 433 U.S. 72 (1977). True enough, but sec.2244(d) creates a free-standing statute of limitations; it is not just a reprise of forfeiture principles that have developed in common-law fashion. Whether the 1995 amendment to Illinois law would be "cause" to relieve Freeman of a forfeiture under judge-made law, cf. Liegakos v. Cooke, 106 F.3d 1381 (7th Cir. 1997), is beside the point. Unless the state petition was "properly filed," Freeman loses.

A better argument--though one Freeman does not make--might be that an action is "properly filed" when the petitioner offers a colorable argument for his position under state law, even if the state eventually rejects the petition on procedural grounds. But we are not authorized to rewrite the statute so that "properly filed" becomes "plausibly filed" or some equivalent phrase ("filed in good faith," "filed with a bona fide argument for the application or modification of state law," etc.). Nor are we disposed to create a conflict among the circuits (to adopt this approach, we would have to disagree with the many cases cited at page 3 above). As written, sec.2244(d)(2) poses an objective question: whether the filing in state court was "proper." Changes of the sort we have mentioned would convert an objective standard to a subjective one, making the law much more difficult to apply. Whether a collateral attack is "properly filed" can be determined in a straightforward way by

looking at how the state courts treated it. If they considered the claim on the merits, it was properly filed; if they dismissed it for procedural flaws such as untimeliness, then it was not properly filed. The objective approach not only facilitates decisionmaking but also gives the parties a clear benchmark. Everyone knows exactly when the federal petition is due. A subjective approach, however, would leave these essential questions unanswered until there had been substantial litigation, for there is no right answer to a question such as "how close to being 'properly filed' is close enough?". Cf. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 399-405 (1990); Pierce v. Underwood, 487 U.S. 552 (1988).

Our cases to date follow the objective approach. For example, Tinker v. Hanks, 172 F.3d 990 (7th Cir. 1999), holds that an unsuccessful application in state court for leave to file a second or successive collateral attack does not toll the time to commence a collateral attack in federal court. Tinker observed that, if the state court had permitted the filing, then the application would have been "properly filed" for purposes of sec.2244(d)(2), but we held that when the state court does not permit the filing, that decision is conclusive under sec.2244(d)(2). We did not ask whether Tinker had made a plausible showing; we asked only whether the state court deemed the filing proper under state law. A prisoner who seeks but does not receive a dispensation from state court--an authorization to file another petition in Tinker, a finding of "no culpable negligence" here--has not achieved a "properly filed" state collateral challenge.

Tinker added that a prisoner who wants to pursue state relief while assuring an entitlement to federal relief can protect himself by filing in both courts. The federal action should be stayed while the state court decides what to do. 172 F.3d at 991. That is equally true of Freeman. Before the AEDPA took effect, a state judge told Freeman that his application was late. That judicial decision should have disabused Freeman of any contrary belief; certainly it brought the statutory amendment forcefully to his attention. Armed with this knowledge, all Freeman had to do in order to protect his interests was to file his federal petition any time before April 24, 1997. The federal judge likely would have stayed proceedings until resolution of Freeman's appeal in state court. Had the district judge dismissed the federal petition, we would have reversed; cases such as Tinker and Post v. Gilmore, 111 F.3d 556 (7th Cir. 1997), show that dismissal is not proper when that step could jeopardize the timeliness of a collateral attack. See also,

e.g., Deakins v. Monaghan, 484 U.S. 193, 202-04 (1988).

Our court has been generous to prisoners. Lindh and Gendron together restarted every state prisoner's clock on April 24, 1996. We extended the time a little more in Jones v. Bertrand, 171 F.3d 499 (7th Cir. 1999), by applying the "prison mailbox rule" to collateral attacks. In Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999), we held out the possibility that some prisoners may invoke equitable tolling or estoppel (neither of which is applicable here) to justify untimely petitions. Freeman himself has been using borrowed time throughout: a strict application of sec.2244(d) would have slammed the door on April 24, 1996, because more than a year of countable time had expired by then. Lindh and Gendron gave Freeman an extra year. It would not be appropriate to bend the statute yet further on Freeman's behalf.

Affirmed

/* To be completely correct, we should say that this language was at the time the fifth sentence of sec.5/122-1; it did not become a separately lettered subsection until 1996. The statute has been further amended since and now reads: "No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or more than 45 days after the defendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court (or more than 45 days after the deadline for the filing of the defendant's brief with the Illinois Supreme Court if no brief is filed) or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." The further amendments do not apply to Freeman's petition and would not affect the outcome even if they did.