Karl McCALLA, Petitioner,

v.

Charles GREINER, Respondent.

No. 01–CV–6314.

United States District Court,
W.D. New York.

April 6, 2005.

Karl McCalla, Stormville, NY, pro se.

Loretta S. Courtney, Monroe County District Attorney's Office, Rochester, NY, for Respondent.

## DECISION AND ORDER

BIANCHINI, United States Magistrate Judge.

## INTRODUCTION

Petitioner, Karl McCalla ("McCalla"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 30, 1995, Officer Frascati of the Rochester Police Department received a tip at about 8 p.m. from a confidential informant about a gold-colored minivan that allegedly contained drugs. Officer Frascati notified Officers Holmsten and Jeroy who located a vehicle matching that description parked on the corner of Lakeview Park and Dewey Avenue in the City of Rochester. Officers Holmsten and Jeroy approached the minivan and activated the overhead flashing lights on their patrol car. When they were about ten to fifteen feet away, still in their patrol car, the gold minivan suddenly started backing up. Officer Holmsten observed a man whom he later

learned was McCalla in the driver's seat of the minivan. S.29–31, 43–44.[1]

Officers Holmsten and Jeroy, along with Officer Frascati in a separate car, gave chase to the minivan, which continued backing up until it reached the intersection of Lakeview Park and Pierpont Street. At that point it started traveling in a forward direction. The officers pursued the minivan as it passed through several stop signs without stopping or slowing down. When the minivan was in the vicinity of Raines Park, Officer Holmsten observed, from a distance of about fifty feet, a fairly small, semi-reflective, plastic-wrapped object being thrown from the driver's side of the minivan. However, Officer Holmsten did not see the object land. S.32–34, 52.

About three hundred feet further, the minivan attempted to negotiate a left-hand turn and ended up on the curb, at which point McCalla was apprehended. Approximately ten minutes later, Officer Holmsten returned to the area around Raines Park where he had seen the plastic-wrapped object thrown from the vehicle. He noticed several citizens waving their arms to flag him down. One of these individuals produced a plastic bag out of a wooden basket which appeared to be the same object that Officer Holmsten had seen tossed from the minivan. The witnesses related to Officer Holmsten that they had seen people in vehicles and on bicycles driving slowly through the area, looking on the ground. The witnesses refused to give their names to Officer Holmsten because they did not want to get involved. S.35, 56–58.

Officer Holmsten retained possession of the plastic bag, which was field-tested at the scene and found to be positive for the presence of cocaine. Officer Holmsten brought the bag to the Public Safety Building and gave it to Officer Feor. It was out of Officer Holmsten's sight for about a minute, and then he turned the bag over to the Property Clerk for storage. S.37–39.

Once at the Public Safety Building, McCalla was interviewed by Officers Feor and Frascati, who showed him the plastic bag recovered at the scene. McCalla said nothing in response. Officer Feor then read him his *Miranda* warnings from a rights card. McCalla agreed to waive his rights and speak to Officer Feor. Officer Feor testified that he neither threatened McCalla, nor promised him lenity in return for talking with him. Officer Feor indicated that McCalla told him that he had a twelfth-grade education. Officer Feor reduced the information received from McCalla into a narrative statement, which McCalla read aloud and then signed. S.7–10, 13–14.

Given the People's failure to call Officer Frascati, defense counsel challenged the reliability and sufficiency of the information available concerning the presence of drugs in McCalla's vehicle. In a ruling issued from the bench, Monroe County Court Judge Charles T. Maloy rejected defense counsel's argument that McCalla was stopped without cause and that the police acted illegally in activating their emergency lights as they proceeded down the street on which McCalla was parked. Judge Maloy held that whether Officer Frascati had a confidential informant was "immaterial," since sufficient probable cause to stop arose when McCalla took off in reverse at a considerable rate of speed, committed several traffic infractions, and threw the bag out the window. S.70–71, 73. Consequently, no *Darden*[2] hearing

---

1.  Citations to "S.___" refer to the transcript from the suppression hearing.

2.  *People v. Darden*, 34 N.Y.2d 177, 181, 356 N.Y.S.2d 582, 313 N.E.2d 49 (1974) ("[T]he

was required. Judge Maloy observed, however, that if the police had stopped McCalla while he was just sitting parked in his vehicle, "all would have to have been brought [sic] at a hearing with Frascati." S.72. Judge Maloy held McCalla's post-arrest statement to be admissible at trial.

McCalla was tried before a jury in Monroe County Court. Officer Frascati did not testify at trial. McCalla did not testify in his own behalf, and his statement to the police was introduced into evidence.[3] A chemist from the Monroe County Public Safety Laboratory testified that the bag tossed from the minivan window contained 3.7 ounces of cocaine. T.361. At the close of proofs, defense counsel requested a missing witness charge regarding Officer Frascati, and the People opposed on the basis that any testimony from him would be cumulative. T.396–97. Judge Maloy declined to charge the jury with a missing witness instruction.

McCalla was convicted on May 28, 1996, of one count of Second Degree Criminal Possession of a Controlled Substance and one count of Third Degree Criminal Possession of a Controlled Substance. He was sentenced on July 10, 1996, to concurrent terms of imprisonment, with the maximum sentence being 6 years to life.

Represented by the Monroe County Public Defender's Office, McCalla appealed his conviction to the Appellate Division, Fourth Department. The sole issue raised was the trial court's alleged error in failing to give a missing witness charge. The Fourth Department unanimously affirmed his conviction on May 7, 1999. *People v. McCalla,* 261 A.D.2d 967, 690 N.Y.S.2d 377 (App.Div. 4th Dept.1999). The New York Court of Appeals denied leave to appeal on November 30, 1999. *People v. McCarrick,* 94 N.Y.2d 826, 702 N.Y.S.2d 596, 724 N.E.2d 388 (1999).

On November 24, 2000, McCalla filed a federal habeas petition (No. 00–CV–6589) pursuant to 28 U.S.C. § 2254 in the Western District of New York. *See* Petitioner's Reply to Respondent's Answer ("Pet'r Reply") at 2 (Docket # 13). This petition contained unexhausted claims and was dismissed without prejudice on January 25, 2001, because it contained unexhausted claims. *See* 1/25/01 Order (Docket # 3), in *McCalla v. Greiner,* No. 00–CV–6589.

McCalla returned to state court to exhaust these claims and filed an application for a writ of error *coram nobis* alleging the ineffective assistance of appellate counsel on March 9, 2001. This was summarily

---

Court regards it as fair and wise ... where there is insufficient evidence to establish probable cause apart from the testimony of the arresting officer as to communications received from an informant ... for the suppression Judge to conduct an *in camera* inquiry."). In *People v. Edwards,* 95 N.Y.2d 486, 719 N.Y.S.2d 202, 741 N.E.2d 876 (2000), the Court of Appeals clarified the rule set forth in *Darden,* stating that where "the informant's testimony is necessary to establish probable cause, the court *must* grant the defendant's request for a *Darden* hearing." *Id.* at 493, 719 N.Y.S.2d 202, 741 N.E.2d 876 (emphasis supplied).

**3.** Officer Feor read the following portion of McCalla's statement into evidence: " 'On 9–

30–95 at about 8:30 p.m. I was stopped on a street near Dewey Avenue, next to the school, north of Driving Park. I got a call to deliever 2 ounces of cocaine from a black lady. She dropped off the cocaine. I went with the cocaine to the Dewey Avenue location to wait for the buyer. I [sic] lady and another guy were watching me from across the street. The police went to stop me and I panicked and backs [sic] down the street fast. I then drove down Pierpont Street with the police chasing me. I threw the bag of cocaine out the window. The police shows [sic] me the same cocaine, which is about 2 ounces.' " T. 279 (Citations to "T.___" refer to the trial transcript.)

denied by the Appellate Division, Fourth Department, on June 8, 2001. *People v. McCalla*, 284 A.D.2d 1022, 726 N.Y.S.2d 43 (App.Div. 4th Dept.2001). At the time McCalla's *coram nobis* application was in state court, New York's procedural rules provided that the Court of Appeals could not review a denial by the Appellate Division of such an application, making the claim fully exhausted at this juncture.

McCalla filed another federal habeas petition in this Court on June 11, 2001. *See* Petition ("Pet.") (Docket #1). Finding that this habeas petition also appeared to contain unexhausted claims, the Court directed McCalla to file an amended petition raising only those grounds for which state court remedies had been exhausted, or to withdraw the entire petition in order to return to state court to exhaust all of the claims. *See* 7/3/01 Order (Docket #2). McCalla elected to pursue the first course of action, and filed an amended petition on July 20, 2001. *See* Amended Petition ("Amend.Pet.") (Docket #3).

McCalla's proposed amendments to his petition relate back to the date the original petition was filed since the claims presently asserted "arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). Thus, for statute of limitations purposes, McCalla's amended petition relates back to the filing date of the original habeas petition pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. *See Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 816 (2d Cir.2000) (Rule 15(c) applies to amendments to habeas corpus petitions filed pursuant to 28 U.S.C. § 2254).

Here, McCalla signed his original petition in the presence of a notary public on June 11, 2001. *See* Pet. at 7 (Docket #1). Generally, when a petitioner is proceeding *pro se*, the "mailbox rule" applies, and the

date of filing is determined from the date certified by the petitioner that the completed and signed petition was given to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 270–71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *accord, e.g., Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir.) ("We conclude that the district court properly extended the prison mailbox rule to petitions for writs of habeas corpus.") ( & citing cases for other federal applications of the rule), *cert. denied*, 534 U.S. 886, 122 S.Ct. 197, 151 L.Ed.2d 139 (2001). Therefore, in this case McCalla's petition is deemed filed as of June 11, 2001.

For the reasons set forth below, McCalla's § 2254 petition is denied.

## DISCUSSION

### I. Timeliness

Respondent asserts that McCalla's petition is untimely and must be dismissed. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996, McCalla had one year from the date on which judgment of conviction became final to file his habeas petition. 28 U.S.C. § 2244(d)(1)(A); *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir.2001). As McCalla's leave application to the New York Court of Appeals was denied on November 30, 1999, he had one year from February 28, 2000, the date his ninety-day time limit to apply for a writ of *certiorari* to the United States Supreme Court ended, in which to file his petition. *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.), *cert. denied*, 534 U.S. 924, 122 S.Ct. 279, 151 L.Ed.2d 205 (2001) (where petitioner appeals conviction to highest state court but fails to file for writ of *certiorari* to U.S. Supreme Court, petitioner's time under AEDPA's one-year statute of limitations begins to run at expiration of ninety-day period during which

petitioner may file petition for writ of *certiorari*). Thus, keeping in mind that 2000 was a leap year, McCalla's petition was due by February 27, 2001, in order to meet the statute of limitations cut-off. McCalla did not file the present habeas petition until June 11, 2001, some three and a half months after the statute of limitations expired.

McCalla asserts that he is entitled to the benefit of the tolling provisions of 28 U.S.C. § 2244(d)(2) for the 63 days that his 2000 habeas petition was pending in this Court from November 24, 2000, until January 25, 2001. He also asserts that he is entitled to tolling for the 92 days that his application for a writ of error *coram nobis* was pending in state court from March 9, 2001, until June 8, 2001. *See* Pet'r Reply at 3 (Docket #13). Title 28 U.S.C. § 2244(d)(2) provides as follows:

> The time during which a *properly filed application for State post-conviction or other collateral review* with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2) (emphasis supplied). The timeliness of the present habeas petition depends upon whether McCalla's initial federal habeas petition counts as a "properly filed application" for "other collateral review" for purposes of the tolling provisions of 28 U.S.C. § 2244.

Until relatively recently, federal courts in the Second Circuit viewed the period during which an initial habeas petition was pending as one in which AEDPA's statute of limitations was tolled. *See Walker v. Artuz,* 208 F.3d 357, 359–60 (2d Cir.2000) ("Close analysis of the statute language ... shows that 'State' modifies only the word 'post-conviction,' and the phrase 'other collateral' is to be given its naturally broader meaning."), *rev'd sub nom. Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). The Supreme Court rejected that view in *Duncan,* finding that the "word 'State' applies to the entire phrase 'post-conviction or other collateral review.'" 533 U.S. at 172, 121 S.Ct. 2120. The Supreme Court found "no likely explanation for Congress' omission of the word 'Federal' in § 2244(d)(2) other than that Congress did not intend properly filed applications for federal review to toll the limitation period." *Id.* at 173, 121 S.Ct. 2120. Were the Court to hold that "other collateral review" includes federal applications for habeas relief, such a construction would "render the word 'State' insignificant, if not wholly superfluous." *Id.* at 174, 121 S.Ct. 2120 ("cardinal principle" of statutory construction is to "'give effect, if possible, to every clause and word of a statute.'") (quoting *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955)). *Duncan* was decided on June 18, 2001, about ten days after McCalla filed his federal habeas petition in this court.[4]

4. The Supreme Court and the Second Circuit have yet to address whether the statutory interpretation of § 2244(d)(2) announced in *Duncan* applies retroactively. The Eighth Circuit recently considered the reach of *Duncan v. Walker,* and held that it applies retroactively. *See Cross–Bey v. Gammon,* 322 F.3d 1012, 1014 (8th Cir.), *cert. denied,* 540 U.S. 971, 124 S.Ct. 442, 157 L.Ed.2d 320 (2003). The *Cross–Bey* court observed that "[w]hile the Supreme Court must expressly make retroactive a new rule of constitutional law, *see Tyler v. Cain,* 533 U.S. 656, 662, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001), when the Court interprets a federal statute and applies that rule of federal law to the parties before it, that interpretation 'must be given full retroactive effect.'" 322 F.3d at 1014 (quoting *Harper v. Virginia Dept. of Tax'n,* 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993)). The Eighth Circuit further relied on the Supreme Court's declaration that "'[a] judicial con-

Recently, the Southern District of New York had occasion to consider a predicament similar to the one faced by McCalla in this case. *See Figueroa v. Fischer*, 2003 WL 1701997 (S.D.N.Y. Mar.31, 2003). The *Figueroa* court determined that it should apply *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir.2001), and retroactively stay the initial habeas petition. As discussed below, the Court finds that this course of action is appropriate here.

In *Zarvela*, the Second Circuit instructed the district courts on how to handle "mixed" petitions containing both exhausted and unexhausted claims in light of AEDPA's statute of limitations and *Duncan v. Walker* so as to avoid prejudice resulting from the consumption of the one-year period by the pendency of the initial federal petition. *See Zarvela v. Artuz*, 254 F.3d at 376. Ordinarily, a district court may exercise its discretion to either stay the exhausted claims of a mixed petition on the condition that the petitioner promptly return to state court to exhaust, or dismiss the entire petition without prejudice. If, however, a dismissal would almost certainly imperil the timeliness of petitioner's re-filing in federal court after exhaustion, the Second Circuit noted that a stay would be the only appropriate course. *Id.* at 380–81; *see also id.* at 379 ("If [the petitioner] mistakenly comes to federal court too soon, *i.e.*, with one or more unexhausted claims, and does so late in the allotted one year, a dismissal of his mixed petition risks the loss of all of his claims because the one-year limitations period will likely expire during the time taken to initiate state

court exhaustion and to return to federal court after exhaustion is completed.").

In *Zarvela*, the Second Circuit determined that the petitioner, who could not have anticipated the Supreme Court's holding in *Duncan*, and who had only two days left in the one-year period when his first petition was filed, was "entitled to have his petition treated as if it had been stayed, provided his entry to the state courts and his return [to federal court] occurred promptly." *Id.* at 382–83. The Second Circuit found that "[a]lthough a district court would generally have discretion whether to stay the exhausted claims of a mixed petition or dismiss the entire petition, outright dismissal was not appropriate for Zarvela because, with so little time remaining on his statutory one-year limitations period, a complete dismissal 'jeopardize[d] the timeliness of a collateral attack.'" *Id.* at 382 (quoting *Freeman v. Page*, 208 F.3d 572, 577 (7th Cir.2001)). Finding that petitioner had been diligent in his further actions, the Second Circuit concluded that "[b]ecause Zarvela's initially filed petition was timely when filed and should have been stayed, subject to appropriate conditions, and because his prompt trip to and from the state courts satisfied the conditions that should have been included in a stay, the initial petition may be considered on its merits." *Id.* at 382–83.

■ In the present case, the Court concludes that it would be appropriate to retroactively consider McCalla's initial petition stayed, so as to toll the period during which it was pending. Although McCalla's initial petition was timely, it was filed fairly late in the one-year limitations period.

struction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.' " *Cross–Bey*, 322 F.3d at 1014 (quoting *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311–13, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994)).

The Eighth Circuit's holding in *Cross–Bey*, which is not binding precedent on this Court, is inconsistent with the recommendations of the Second Circuit in *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir.2001), as well as the spirit of fairness articulated in that decision. Therefore, I decline to follow it.

It was highly unlikely that McCalla would have been able to return to state court, exhaust his claims, and re-file in federal court in the one month he had left on the limitations period following the Court's dismissal. Thus, under the new rule of *Duncan,* if applied, the instant petition essentially would have been time-barred as of the district court's January 25, 2001 order dismissing the prior petition.

Furthermore, the Court finds that McCalla acted diligently in returning to state court to exhaust his ineffective assistance of appellate counsel claims: He filed his application for a writ of error *coram nobis* on March 9, 2001, and upon receiving a state court denial on June 8, 2001, he promptly filed his federal petition on June 11, 2001. Moreover, McCalla had reason to believe that he still had time to file his petition since the then-prevailing law in this Circuit, pursuant to *Walker v. Artuz, supra,* was that the time in which the initial federal petition was pending would not count against the statute of limitations.

Therefore, because McCalla had almost no time remaining to exhaust his state court remedies after the initial habeas petition was dismissed, and because he has been reasonably diligent in pursuing his post-conviction remedies, the original habeas petition should be deemed stayed *nunc pro tunc. See, e.g., Figueroa v. Fischer,* 2003 WL 1701997, at *5–6 (tolling statute of limitations where petitioner filed his initial habeas petition before the statute of limitations began to run, filed his C.P.L. § 440.10 motion less than three weeks after the court dismissed his initial habeas petition without prejudice and filed his second habeas petition seven months after he exhausted his state court remedies); *Leake v. Senkowski,* 274 F.Supp.2d 588, 591 (S.D.N.Y.2003) (tolling limitations period where petitioner promptly returned to federal court after exhausting his state

claims only seven weeks after the New York Appellate Division denied leave to appeal his C.P.L. § 440.10 motion; although petitioner waited nearly 10 months to file initial habeas corpus petition, his overall diligence must be viewed in light of fact that he was still within one-year limitations period, had pendency of initial federal petition not been counted); *compare, e.g., Baity v. Mazzuca,* 2002 WL 87664, at *4 (S.D.N.Y. Jan.23, 2002) (declining to find equitable tolling or to apply *Zarvela,* where initial petition was dismissed with only 10 days remaining in one-year limitations period, because petitioner did not act diligently in exhausting state court remedies, waiting 11½ months to file motion to vacate pursuant to N.Y.Crim. Proc. Law § 440.10 and 16 months to return to state court), with *Devino v. Duncan,* 215 F.Supp.2d 414, 418 (S.D.N.Y.2002) (granting relief under equitable tolling principles, and reinstating petition, where petitioner sought to exhaust state court remedies within 33 days after dismissal of initial habeas petition, and returned to federal court 13 days after conclusion of those proceedings).

Thus, applying the reasoning of *Zarvela,* the period during which McCalla's initial habeas petition was pending in this Court should serve to toll AEDPA's statute of limitations. As noted above, the one-year period began to run on February 28, 2000, and ran for 269 days, at which time McCalla filed his first federal habeas petition on November 24, 2000. This filing tolled the limitations period for 63 days, until the petition was dismissed on January 25, 2001. Forty-one (41) days passed from that time until March 9, 2001, the date on which McCalla filed his application for a writ of error *coram nobis.* The limitations period then was tolled for 92 days, beginning March 9, until the Appellate Division denied the *coram nobis* motion on June 8, 2001. Two (2) days accrued to the limita-

tions period between that denial and June 11, 2001, when McCalla filed the present habeas petition, thereby stopping the clock. Taking into account the equitable tolling for the initial habeas petition, a total of 312 days are counted against the one-year statute of limitations, making McCalla's petition timely.

## II. The Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

## III. Merits of the Petition

McCalla asserts three grounds for entitlement to habeas relief, all of which stem from his appellate counsel's alleged incompetence.

### A. Ineffective Assistance of Appellate Counsel

#### 1. Legal Standard

■ A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.), *cert. denied*, 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992), *cert. denied*, 508 U.S. 912, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993)). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. *Mayo*, 13 F.3d at 533–34; *see also Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Aparicio v. Artuz*, 269 F.3d at 95. A habeas petitioner may ground an ineffective assistance claim on an omission of either federal or state law. *Mayo*, 13 F.3d at 533–36; *Sellan v. Kuhlman*, 261 F.3d 303, 309–10 (2d Cir. 2001).

■ Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. at 288, 120 S.Ct. 746 (citing *Jones v. Barnes*, 463 U.S. 745, 750–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)); *accord, e.g., Sellan v. Kuhlman*, 261 F.3d at 317 ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (citations omitted). The habeas court should not second-guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Jones*, 463 U.S. at 754, 103 S.Ct. 3308; *see also Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir.1998). Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533.

When preparing McCalla's brief on direct appeal, the assistant public defender, acting as appellate counsel, informed him that only one issue would be raised therein: whether the trial court erred in refusing to give a missing witness charge based

upon the People's failure to call one of the officers present at the time of McCalla's apprehension. *See* Letter from D. Dubrin to Petitioner, Exhibit ("Ex.") G to Pet'r Reply (Docket #13). Appellate counsel advised McCalla that he could seek permission from the Appellate Division to file a *pro se* supplemental brief and explained the procedure for doing so.

Thereafter, McCalla sent the assistant public defender four letters in which he expressed concern that there were other meritorious arguments that should be raised on appeal, and requested that counsel hold his brief "in abeyance" while they continued to research these additional issues. *See* Letters from Petitioner to D. Dubrin, Ex. C, D, E & F to Pet'r Reply (Docket #13). The last of these letters is dated October 19, 1998. That day, the assistant public defender filed McCalla's appellate brief in the Fourth Department raising only the missing witness charge. McCalla did not seek permission to file a supplemental *pro se* brief setting forth any additional bases for overturning his conviction. The Appellate Division rejected the missing witness argument. *See People v. McCalla*, 261 A.D.2d at 967, 690 N.Y.S.2d 377.

## 2. Alleged Grounds for Counsel's Ineffectiveness

In his habeas petition, McCalla asserts that appellate counsel was ineffective in failing to challenge (1) the trial court's refusal to hold a *Darden* hearing; (2) the allegedly improper chain of custody for the drugs seized incident to the defendant's arrest; and (3) the trial court's refusal to provide the jury with an exemplar of the defendant's handwriting. *See* Amend. Pet. at 7, and attached Memorandum of Law ("Pet'r Mem.") at 1–11 (Docket #3). None of these alleged omissions by appellate counsel, either singly or collectively, amount to constitutionally deficient representation.

### a. Failure to hold a *Darden* hearing

McCalla argues that the trial court erred in declining to hold a *Darden* hearing in light of the People's failure to produce Officer Frascati or the confidential informant. He faults his appellate counsel for not broaching this issue on direct appeal.[5]

This argument likely would not have succeed on direct appeal, since the intervening reckless and illegal driving by McCalla, resulting in several traffic violations, gave the police adequate cause to

---

**5.** The right to a *Darden* hearing has its genesis in the Fourth Amendment's proscription against unreasonable searches and seizures. In *Stone v. Powell*, the Supreme Court considered "the proper scope of federal collateral protection of criminal defendants' right to have evidence, seized in violation of the Fourth Amendment, excluded at trial in state court." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (citing *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). The Supreme Court determined that federal courts should deny habeas review where the State has provided "an opportunity for full and fair litigation of a Fourth Amendment claim," because "the remedy for Fourth Amendment violations provided by the exclusionary rule 'is not a personal constitutional

right.'" *Id.* (quoting *Stone*, 428 U.S. at 486, 96 S.Ct. 3037). Noting that the Sixth Amendment right to effective assistance of counsel *is* a fundamental right, the *Kimmelman* court declined to extend *Stone* to mean "that criminal defendants may not raise ineffective-assistance claims that are based primarily on incompetent handling of Fourth Amendment issues on federal habeas." *Id.* at 378, 106 S.Ct. 2574. Were it to do so, the Supreme Court noted, the result would be to "deny all defendants whose appellate counsel performed inadequately with respect to Fourth Amendment issues the opportunity to protect their right to effective appellate counsel." *Id.* Thus, even though the basis for this aspect of McCalla's ineffective assistance claim is an alleged Fourth Amendment violation, it is cognizable on habeas review.

stop him. Furthermore, after the officers retrieved the drugs which they saw being thrown from the driver's side of the vehicle, they had probable cause to arrest McCalla. Thus, there was no need for a *Darden* hearing. *See People v. Farrow*, 98 N.Y.2d 629, 631, 745 N.Y.S.2d 752, 772 N.E.2d 1110 (2002) (*Darden* hearing regarding informant's identity unnecessary where police officer's observations of defendant engaging in apparent drug transaction independently could establish probable cause to arrest defendant).

### b. Improper chain of custody

McCalla argues that there are deficiencies in the chain of custody based on alleged discrepancies in the officers' testimony about the appearance of the drugs, and that his appellate counsel was ineffective in not raising this issue on appeal.

Officer Holmsten testified at trial that the substance retrieved from the witnesses at the crime scene was "the same color" as the drugs introduced at trial, but the contents of the bag "were in more of a solid shape when [he] took possession of them." T.311. He noted that they "had been pretty much pulverized" by the time he saw them at trial. T.311–12. Officer Feor, to whom Officer Holmsten provided the bag thrown from McCalla's minivan, testified that the contents were in "like a brick or rock, hard, solid form." T.270. The analyzing chemist, William Anderson ("Anderson"), testified that when he first obtained the seized bag, it contained a "caked material" which was "white and moist." T.360. Because the material contained moisture, Anderson allowed it to air-dry before continuing with his testing. T.361. He then ground it up using a mortar and pestle, resulting in the material's granular condition at trial. T.373–74.

■ Both federal and New York state law clearly hold that a defect in the chain of custody goes to the weight of the evidence, not its admissibility. *Cassells v. Ricks*, 2000 WL 1010977, at *7 (S.D.N.Y. July 21, 2000) (citing, *e.g., United States v. Hon*, 904 F.2d 803, 810 (2d Cir.1990); *People v. Tirado*, 267 A.D.2d 95, 95, 700 N.Y.S.2d 135 (App.Div. 1st Dept.1999)) (citing *People v. Julian*, 41 N.Y.2d 340, 344, 392 N.Y.S.2d 610, 360 N.E.2d 1310 (N.Y.1977)). According to McCalla, there is "no testimony concerning how the drugs got to be a semi-liquid substance described by Officer Anderson." Pet'r Mem. at 8 (Docket # 3). However, Anderson never testified that the contents of the bag were in a "semi-liquid" form; this statement by McCalla mischaracterizes Anderson's testimony. Moreover, there is no inconsistency between Officer Feor's observations and those of Anderson; it is certainly possible for a substance to be caked or hard, and yet still contain some moisture.

Since the prosecution established a chain of custody sufficient to provide reasonable assurances, *see, e.g., People v. Tirado*, 267 A.D.2d at 95, 700 N.Y.S.2d 135, that the package of cocaine found on the night of the incident was the same package introduced into evidence at trial and that its condition essentially was unchanged, such an argument would not have been successful on appeal. Thus, McCalla was not prejudiced by appellate counsel's failure to raise this non-meritorious claim.

### c. Refusal to provide jury with handwriting exemplar

McCalla complains that his appellate counsel did not contest the trial court's refusal to allow him to sign his name several times pursuant to a request from the jury.

■ Defense counsel argued on summation to the jury that McCalla did not sign the confession admitted into evidence. He pointed out that Officer Feor, who read the statement into the record, omitted the

part indicating that the person giving statement was named "Carl McCall" and lived at 702 Seward Street. T.399. Defense counsel referred to McCalla's New York State driver's license, which indicated that McCalla lived on Midvale Street in Uniondale, New York. T.399. He noted that the signature at the bottom of the statement read "Karl McCalla," or possibly "Macalloa." Defense counsel argued that this proved that whoever forged defendant's signature "got it wrong." T.400. During deliberations, the jury sent a note to the judge asking, "Can we have the defendant sign his name a few times?" Judge Maloy denied the request without comment. Defense counsel took no exception to the judge's ruling on this issue. T.441.

McCalla asserts that his appellate counsel was ineffective in not arguing that the trial judge erred in precluding him from introducing a sample of his signature to the jury. However, the court was well within its discretion in refusing to allow McCalla to introduce an exemplar of his signature. *See People v. Aska,* 91 N.Y.2d 979, 981, 674 N.Y.S.2d 271, 697 N.E.2d 172 (N.Y.1998) ("As a general rule, the trial court is granted broad discretion in making evidentiary rulings precluding or admitting such evidence and, absent an abuse of discretion, a trial court's decision should not be disturbed on appeal."); *see also United States v. Lam Muk Chiu,* 522 F.2d 330, 331–32 (2d Cir.1975); *accord United States v. Pastore,* 537 F.2d 675, 678 (2d Cir.1976). The Second Circuit in *Lam Muk Chiu* upheld the district court's refusal to allow defendant to introduce handwriting samples into evidence of the basis that they were "objectionable as self-serving exemplars prepared specially for trial." 522 F.2d at 331. The Second Circuit noted that "[u]nquestionably, a defendant has a strong motive to alter his writing so as to render it dissimilar to an incriminating

document alleged by the prosecution to be in his hand." *Id.* at 332.

Here, the Court cannot say that the trial judge unreasonably declined to have the defendant sign his name for the sole purpose of allow the jury to compare the signature with the one on his statement. First, McCalla had a strong motive to attempt to disguise his signature by any means necessary. Moreover, jurors are not presumed experts in the field of forensic handwriting analysis. Because the trial judge was well within his discretion in refusing to admit a handwriting sample by McCalla, the appellate court would have been unlikely to reverse that decision on appeal. Again, McCalla was not prejudiced by appellate counsel's failure to raise this non-meritorious argument.

### 2. Analysis of Counsel's Performance

Because all three of the foregoing arguments probably would not have succeeded on appeal, appellate counsel was not deficient in omitting them. In light of the fact that McCalla has failed to prove that his appellate counsel's performance was deficient—the first prong of the test for ineffective assistance of counsel—it is unnecessary to address the second "prejudice" prong of this standard. *See Strickland v. Washington,* 466 U.S. 668, 694, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("[T]here is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one."). Moreover, because the arguments McCalla faults counsel for omitting on appeal are without merit, he is unable to prove prejudice as well. *See Mayo v. Henderson,* 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that "there was a 'reasonable probability' that [his] claim

would have been successful . . . ." " (alteration in original) (quoting *Claudio v. Scully,* 982 F.2d at 803)). Therefore, McCalla has failed to prove either that his appellate counsel provided deficient assistance, or that this performance resulted in prejudice against him.

## CONCLUSION

For the reasons stated above, Karl McCalla's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. Because McCalla has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**